WILLIAM E. HANNA, Plaintiff, *v.* EMORY A. STEDMAN, as President of EXPRESSMEN'S MUTUAL BENEFIT ASSOCIATION, Defendant.

First Department, December 13, 1918.

Judgment — validity of judgment of sister State — full faith and credit provision of Federal Constitution — enforcement of foreign judgment — jurisdiction — res judicata — effect of failure to take Federal question to Supreme Court of United States.

The full faith and credit provision of the Federal Constitution does not prevent an inquiry into the jurisdiction of the court of a sister State to pronounce a judgment sued upon in this State. Nor does it require us to disregard or subordinate judgments rendered in our own State simply because they conflict with a judgment rendered in a sister State.

The rule that the courts of this State have no jurisdiction directly or indirectly to sit in review upon the judgments rendered by a court of general jurisdiction in a sister State works both ways and deprives the court of a sister State of jurisdiction to pronounce a judgment which in effect reviewed and overruled a judgment of our Supreme Court between the same parties and concerning the same subject-matter.

Where the Supreme Court of this State has entered a judgment on a bill of interpleader by a mutual benefit association deciding that moneys collected by said association for the payment of a death benefit constitute a specific fund, a court of a sister State, in a subsequent action by a resident of said State, who was served by a publication in the proceeding in this State, to recover said specific fund, the facts being uncontradicted, is prohibited by the rule of *res judicata* from pronouncing a contrary judgment.

The defendant benefit association in an action against it upon the judgment of the sister State is not concluded by said judgment upon the ground that its claim of *res judicata* in the action in the sister State raised a Federal question which it has failed to take to the Supreme Court of the United States.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Herman S. Hertwig* of counsel [*Richard S. Culbreth* with him on the brief; *Everett, Clarke & Benedict,* attorneys], for the plaintiff.

*Miles M. Dawson* of counsel [*Howard W. Ameli* and *Richard Blaine Dawson* with him on the brief], for the defendant.

SHEARN, J.:

A most regrettable situation is presented by this appeal. Two judgments are exhibited which are diametrically and fundamentally in conflict, one rendered by the Supreme Court of the State of New York, the other by a court of general jurisdiction in a sister State, the Court of Common Pleas of Baltimore city, Md. In an action in this court, brought upon the Maryland judgment, each party insists upon the validity and binding force of the judgment rendered in its respective State, plaintiff invoking the full faith and credit provision of the Federal Constitution, defendant relying upon the rule of *res adjudicata*.

The question is presented upon an agreed state of facts. The plaintiff is the assignee of the Maryland judgment. The defendant association is a fraternal body, organized under the laws of this State, " for the sole benefit of its members and not for profit," " engaged in collecting assessments to be paid to the beneficiaries of deceased members." In 1873 Charles H. Ehrman of Baltimore was admitted to membership and there were issued to him two membership certificates, each carrying a death benefit of $1,000 to be raised by assessment. In each certificate the wife, Eliza E. Ehrman, was designated as beneficiary. This was pursuant to a by-law of the association which provided " that the name of the person or persons to whom the amount of the fund shall be paid in the event of death shall be endorsed upon the certificate of membership and upon the register of the association. In case the member fails to elect to whom the fund shall be paid, if a married man, it shall be given to his widow and children, in case there be no widow and children, it shall be paid to the parents or either of them, if neither of them be living then to the next of kin." There was also printed on each certificate a clause to enable a member, if he so desired, to designate another beneficiary to take in the event of his being predeceased by the beneficiary first named. Eliza E. Ehrman predeceased her husband and he died on January 1, 1899, a citizen and resident of Baltimore, Md., without having made the alternative designation provided by the by-laws. Immediately after receipt of due proofs of the death of Charles H. Ehrman, the defendant association " duly made an assess-

ment against the members of the association," and " the amount of $1,967.60 was duly collected on account of said death. * * * The amount so collected was not kept separate from the other funds of the association, but * * * all the funds of the association were deposited in a bank or trust company in Elmira, New York [which was the defendant's principal place of business], in a general account, known as the ' Beneficiary Fund.' " Conflicting claims to this death benefit were presented by Alonzo M. Hurlock, as administrator with the will annexed of the estate of Eliza E. Ehrman; by Alice Heritage, niece of Charles H. Ehrman and a beneficiary under his will; by Emma L. Heritage, as executrix under the last will and testament of Charles H. Ehrman; all of whom in 1899 and 1900 were citizens and residents of Maryland; by Mary H. Arey, who in 1899 was a citizen and resident of Tennessee, and a sister and surviving next of kin and sole legatee under the will of Eliza E. Ehrman; and by Edward P. Ehrman, who in 1899 was a citizen and resident of the State of New York, and a son of Charles H. Ehrman.

On August 30, 1899, the defendant association, upon the theory that the money collected by it through levying an assessment on its members and held by it in bank to the credit of the aforesaid " beneficiary fund " constituted a specific fund to which the various parties above mentioned made conflicting claims, filed a bill of interpleader in the Supreme Court of this State, in Chemung county, where its principal office and the fund were located, naming all of said claimants as parties defendant, and service upon all of the non-resident defendants was made by publication. None of the defendants named in said action appeared excepting the defendants Emma L. Heritage, as executrix and individually, and Alice Heritage and Edward P. Ehrman, who duly appeared and separately answered.

On September 9, 1899, Alonzo M. Hurlock, as administrator with the will annexed of the estate of Eliza E. Ehrman, commenced an action in the Court of Common Pleas of Baltimore city against the defendant association to recover the aforesaid sum of $1,967.60 collected by the defendant association. At that time the defendant association maintained a division known as No. 49, which embraced members in the

District of Columbia, Virginia, Pennsylvania, New Jersey and Maryland, and one Rawlings was the secretary of Division No. 49 and transacted the business of his division in Baltimore city. The defendant association had no property in Maryland except some letter heads and, from time to time, moneys collected by Rawlings on assessments and then forwarded by him to the home office in New York, but the defendant association was subject to service of process in Maryland and duly appeared in that action. In the meantime the New York action proceeded to judgment and on December 22, 1899, judgment was duly entered, which, after reciting the service of the summons and complaint, the appearances and defaults, " and due proof of the allegations of the complaint as against the defendants in default having been made by evidence offered on the part of the plaintiff and the answering defendants, and the Court having duly considered the evidence offered upon the trial of the said issues," adjudged that the sum of $1,967.60, collected as aforesaid, " was a specific fund and specific moneys in the possession, custody and control of " the defendant association; that conflicting claims were made to said fund as alleged in the complaint; that the defendant association had brought the fund into court and was willing to pay it to such person or persons as the court should direct and had brought the action without collusion; that said Edward P. Ehrman, the son of the insured, was solely entitled to said moneys or fund, and, upon his consent, by his answer in the action, that the said Emma L. Heritage as executrix of the last will and testament of Charles H. Ehrman, deceased, was at and before the commencement of the action and at the time of judgment solely entitled to said moneys; furthermore, that, excepting said Emma L. Heritage as executrix, " neither of the defendants has any interest, estate, claim or demand in or to the said moneys," and, accordingly, that after retaining costs and paying the balance to said Emma L. Heritage as executrix, the defendant association be released and discharged from all claims growing out of the membership of Charles H. Ehrman in the defendant association. Pursuant to said judgment and on the day that it was entered the defendant association paid the said fund or moneys, less costs, to Emma L. Heritage as executrix. Thereafter and on January 17, 1900,

the defendant association filed in the Court of Common Pleas
of Baltimore city as a plea, in addition to its previous
general denial, the proceedings and judgment in the Supreme
Court in this State as *res adjudicata* and finally determinative
against the claim of the plaintiff in the Maryland action to
recover the moneys claimed upon the aforesaid membership
certificates.

A demurrer to this plea was promptly sustained and on
February 2, 1900, judgment was made absolute in favor of the
plaintiff in the Maryland action for $1,967.60 with interest and
costs. An appeal from said judgment was prosecuted to the
Court of Appeals of Maryland and the judgment was affirmed.
That learned court considered whether the decree of the
Supreme Court of this State was binding upon the plain-
tiff in the Maryland action (*Expressman's Mutual Benefit
Association* v. *Hurlock*, 91 Md. 585), stating that " The
answer to this question in a great measure depends upon
another, and that is whether the suit in which the decree was
passed was a proceeding in *rem* or in *personam*, for if the latter
it is clear the plaintiff is not bound, for the reason that he
was not summoned except by publication." The learned
Maryland Court of Appeals determined and held that the suit
in this State was not a proceeding *in rem* but was one *in
personam*, although the judgment exhibited to the Maryland
court showed that the Supreme Court of this State had
expressly decided to the contrary. Fifteen years later and on
or about October 19, 1915, the Maryland judgment was
assigned to the plaintiff and action was begun on October 21,
1915, in the Supreme Court, county of New York, to recover
on said judgment. To determine the vexed question thus
arising this agreed statement of facts has been submitted.

The full faith and credit provision of the Federal Con-
stitution does not prevent an inquiry into the jurisdiction
of the Maryland court to pronounce the judgment sued upon.
(*Cole* v. *Cunningham*, 133 U. S. 107, 112.) In the case cited,
Chief Justice FULLER, in considering the meaning and
limitation of the constitutional provision, said: " This does
not prevent an inquiry into the jurisdiction of the court,
in which a judgment is rendered, to pronounce the judgment,
nor into the right of the State to exercise authority over the

parties or the subject matter, nor whether the judgment is founded in, and impeachable for, a manifest fraud. The Constitution did not mean to confer any new power on the States, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It did not make the judgments of the States domestic judgments to all intents and purposes, but only gave a general validity, faith and credit to them as evidence. No execution can be issued upon such judgments without a new suit in the tribunals of other States, and they enjoy, not the right of priority or privilege or lien which they have in the State where they are pronounced, but that only which the *lex fori* gives to them by its own laws, in their character of foreign judgments."

It appearing from the judgment sued upon that the Maryland court had jurisdiction over the parties and that there was submitted to it for decision an issue raised by the pleadings, namely, whether a prior judgment of a court of general jurisdiction in a sister State was *res adjudicata*, under ordinary circumstances no court of another State would examine into the merits of the decision reached. The courts of this State have no jurisdiction directly or indirectly to sit in review upon the judgments rendered by a court of general jurisdiction in a sister State. But that principle works both ways and just as effectively deprived the Maryland court of jurisdiction to pronounce a judgment which, in effect, reviewed and overruled a judgment of our Supreme Court between the same parties and concerning the same subject-matter. The plaintiff brings forward as evidence of the validity of his claim and defendant's liability thereon the Maryland judgment. Examined, its basis is a decision of the Maryland court that the moneys assessed and collected by this defendant association did not constitute a specific fund as to which a binding judgment *in rem* could be rendered. But the defendant rejoins with a prior New York judgment, in an action to which the plaintiff's assignor and this defendant were both parties, deciding that these moneys did constitute a specific fund as to which a binding judgment could be rendered. The full faith and credit provision of the Federal Constitution does not require us to disregard or subordinate judgments rendered in our own State simply

because they conflict with a judgment rendered in a sister State. Certainly it cannot be that the Maryland judgment is to prevail because it is the last judgment. On the contrary. "It is a rule of almost universal application that, between courts of the same sovereignty and concurrent jurisdiction, the court which first acquires jurisdiction of the controversy or of the res should be suffered by every other court to decide every question within the sphere of the pending cause, and to continue in the possession of the subject matter of the controversy until every question before it shall be decided and the res discharged from its control. This rule has its foundation, perhaps, in comity; but the fruits of its recognition have been so beneficient, when applied to courts of concurrent jurisdiction created by different sovereignties, as to justify the conclusion that it is not only a rule of comity, but one of necessity. The cases are numerous which recognize its binding force and illustrate its wide application." (*Phelps* v. *Mutual Reserve Fund Life Assn.*, 112 Fed. Rep. 453, 464, 465.) However, the application of this wholesome rule does not solve the difficulty, for whether or not the money which was collected by assessment constituted a specific fund or *res* is the very matter in conflict. The determinative principle to be applied is found to lie, not in a re-examination and review of the question whether these moneys constituted a specific fund and, therefore, whether the New York judgment was *in rem* or *in personam*, but rather in ascertaining whether a well-settled rule of law, that of *res judicata*, did not deprive the Maryland court of jurisdiction to pronounce the judgment sued upon.

Unquestionably the Maryland court had a perfect right to inquire into the jurisdiction of the New York court to render the judgment *in rem*, just as we have the right to inquire into its jurisdiction to render the judgment in suit. Furthermore, want of jurisdiction may be shown either as to the subject-matter of the person, or, in proceedings *in rem*, as to the thing. (*Thompson* v. *Whitman*, 18 Wall. 457, cited with approval in *Andrews* v. *Andrews*, 188 U. S. 14, 34.) But while, as held in *Thompson* v. *Whitman* (*supra*), it was open to the plaintiff in the Maryland court to contradict the record of

the New York judgment as to the facts necessary to give the New York court jurisdiction, it was not open to the plaintiff or to the learned Maryland court to attack collaterally the conclusion of law and the decision of the New York court based upon facts as to which there was no contradiction. The plaintiff in the Maryland suit made no attempt whatever to contradict the facts which the New York court found sufficient for a judgment *in rem,* but merely asked the Maryland court to pronounce a contrary decision upon the same facts. This, and we say it will all respect to the learned Maryland court, it had no jurisdiction to do. It was prohibited by the established rule of *res judicata.* The jurisdiction of the New York court over the Maryland non-residents, served by publication, depended upon the judgment being one *in rem.* This, in turn, depended primarily upon whether the moneys assessed and collected by the defendant association constituted a specific fund. The New York court as a matter of law concluded that it did. Its decision was *res judicata,* and no court of another State had jurisdiction in an action between the same parties to pronounce a judgment to the contrary which would be binding upon the defendant in the State of original jurisdiction. If it be said that, by so deciding, we are in effect reviewing the decision of the Maryland court which considered this very question of *res judicata,* we can only say that we have no such intention and that, if the facts were reversed, and the Maryland court had been the one of original jurisdiction and had upon disputed facts, prior to the courts of any other State, announced a decision that these moneys did not constitute a specific fund and that, therefore, there could be no judgment except *in personam,* we should have given full faith and credit to such judgment, upon the principle of *res judicata,* despite any subsequent decision of the courts of our own State upon the same facts and between the same parties. Having exhibited to us a duly authenticated judgment of the Supreme Court of our State, we are quite confident that the full faith and credit provision of the Federal Constitution does not require this court to disregard the judgment, or, against its will, to review the judgment, practically as upon appeal, simply because it is collaterally attacked by a later judgment of a court of a

sister State which, upon the principle of *res judicata*, that court had no jurisdiction to pronounce.

It is suggested that the plaintiff's assignor, the Maryland administrator, was not bound by the New York judgment, having been served only by publication, because at that time a foreign administrator could neither sue nor be sued in the State of New York,* but, passing the answer suggested by the facts that the suit was *in rem* and not *in personam*, that the plaintiff had submitted to the defendant a written claim for the fund and that subdivision 5 of section 438 of the Code of Civil Procedure definitely provides for service by publication in such a case, it suffices to say that the judgment in the New York action passed upon and adjudicated the validity of the notice given to the plaintiff's assignor by publication.

It is also said that the defendant ought to be held to be concluded by the Maryland judgment because its claim of *res judicata* raised a Federal question which it might have taken to the Supreme Court of the United States. It is difficult to understand why this course was not pursued. But if the defendant chose to stand on the principle of *res judicata* and rely on the courts of its own State to uphold the validity of a judgment rendered previously between the same parties and upon the same undisputed jurisdictional facts, rather than to go to the expense of carrying the case to the Supreme Court of the United States, we do not think that its course in any manner affected the validity and binding character of the New York judgment. As a practical matter the defendant's decision not to sue out a writ of error in the Federal court has seemingly been justified by the plaintiff's assignor's waiting more than fifteen years after the Maryland judgment was entered before attempting to enforce it in this State.

With the question above discussed there is also presented by the submission an interesting question as to whether the prosecution of the action was not barred by the Statute of Limitations. In view of the conclusion that we have

* See Laws of 1911, chap. 631, since adding to Code Civ. Proc. § 1836a.—[REP.

reached on what we regard as the main point, it is unnecessary to pass upon whether the action was barred by the statute, especially as upon this phase of the matter not all of the members of the court are in accord.

Judgment should be rendered in favor of the defendant, with costs.

CLARKE, P. J., LAUGHLIN, PAGE and MERRELL, JJ., concurred.

Judgment ordered in favor of defendant, with costs. Order to be settled on notice.