Thomas P. Hall v. Wilder Manufacturing Company, Appellant.
—293 S. W. 760.    ⚡ 2. A.L.R. 723 (1928)

Division One, February 16, 1927.

**1. JURISDICTION: Of Foreign Court: Suit on Judgment: Determined upon Full Hearing: Res Adjudicata.** The general doctrine is that in a suit brought in one State upon a judgment rendered in another State, the jurisdiction of the court rendering such judgment may be challenged. The doctrine is the result of the harmonious co-existence and relation of the due-process and full-faith-and-credit clauses of the U. S. Constitution, to the effect that what is done in violation of the due-process clause is not entitled to be enforced under the full-faith-and-credit clause. But there is an exception to that general doctrine, and it is that where the question of the jurisdiction over the defendant was brought into direct issue in the court of the other State, and was determined adversely to him upon evidence submitted by both parties, and he did not appeal from the adjudication, and judgment was there later rendered against him upon the merits without further contest, he cannot, when suit is brought on such judgment in this State, raise the same issue again, but the question of jurisdiction, being thus pointedly raised and fully adjudicated, and submitted to by defendant, cannot be reopened, but must be accepted as **res adjudicata.**

**2. ———: Test: Doing Business in Foreign State: Local Law: Due Process.** The question whether the New York court obtained jurisdiction over the defendant, a Missouri corporation, by service upon its agent or employee there was in reality the question whether defendant was doing business there in such sense as to be subject to ordinary suit upon an alleged debt and amenable to process issued by the courts of that State, and the question whether defendant was so doing business there was not one of local law or statutory construction, but one of due process of law under the Constitution of the United States. The test of the New York court's jurisdiction is not whether the business was interstate or intrastate, nor is its jurisdiction to be determined by New York statutes prescribing the conditions under which a foreign corporation may do business in the State, but the question of jurisdiction is to be determined by the due-process clause, and if the defendant was not afforded due process of law the full-faith-and-credit clause does not require the Missouri court to render judgment against him upon an exhibition of the judgment rendered by the New York court. But where the New York court, with power to determine its jurisdiction over foreign corporations doing business in that State, was asked by defendant to determine whether it was doing business in that State, and whether on that ground the court had obtained jurisdiction over it by service of process upon its agent there, and the court, upon evidence submitted by both parties, determined that it did have jurisdiction, and defendant abided by that adjudication, there is no longer any question of due process of law in the case, and defendant cannot, when sued upon the monetary judgment later rendered against it without contest, have the same question upon the same evidence adjudicated by the Missouri court, but the full-faith-and-credit clause has foreclosed the question.

**3. ———: Res Adjudicata.** Where a question proper for judicial determination is directly put in issue, and finally determined in a legal proceeding by a court having competent authority and jurisdiction to hear and determine the question, its decision and determination will be deemed final and conclusive upon the parties and their privies, in all further litigation between them in which the same question arises, so long as the judgment remains

unreversed or is not otherwise set aside. The defendant having invoked a direct determination of the question of jurisdiction over it in the New York court of general jurisdiction and having had a full hearing upon that question and having permitted an adverse decision to stand, that decision is not subject to collateral attack, but the same effect must be given to it as would be given in New York courts, and the same force and effect as would be given it had it been rendered by a Missouri court.

4. ———: ———: **Collateral Attack: Question of Law.** The rule applied to collateral attack upon domestic judgments is applied to collateral attack upon a judgment of a sister State. Notwithstanding the facts upon which jurisdiction of the court of the sister State depended are undisputed, a collateral attack upon its judgment cannot be indulged on the theory that the question of its jurisdiction was one of law and the court wrongfully construed the law, where the parties were afforded due process of law, the issue of jurisdiction was pointedly and directly contested, the court upon evidence submitted expressly decided that it did have jurisdiction, and the defendant abided by that decision. Whether the court rightly or wrongly interpreted the applicable law, the question was completely adjudicated, and the decision became res adjudicata.

5. **COUNTERCLAIM: Unliquidated Demands: Non-Residence.** In an action on an account, although an action at law, the defendant, by way of equitable relief, is entitled to set off demands of his own arising out of contract, whether liquidated or unliquidated, in such manner as will do justice between the parties; and non-residence of the plaintiff is a sufficient ground for the allowance of an equitable set-off.

6. ———: **Action on Foreign Judgment: Assignment: Party in Interest.** The defendant is a Missouri corporation, and was sued in New York by a corporation of that State on a trade acceptance given for merchandise sold by it to defendant. Judgment having been rendered in favor of the New York corporation in the sum of $2,371.10, it filed suit thereon in a Missouri court, and thereafter assigned the judgment to the present plaintiff, who was substituted as plaintiff in its stead. Defendant in its answer alleged that the assignment had been made for the purpose of preventing it from asserting its counterclaim; that the New York corporation was the real party in interest, and then proceeded to set up its counterclaim, based upon an alleged breach by said corporation of a contract of sale by it of certain merchandise to defendant, whereby the defendant was damaged in the sum of $5,016.10. The court sustained plaintiff's motion to strike out the counterclaim or set-off. The answer designated the counter-demand both as a counterclaim and as a set-off. The counter-demand was one for unliquidated damages, based upon the alleged failure of the New York corporation to furnish, within the time agreed upon, certain articles of a designated character for a specified purpose, ordered by defendant from it, whereby, it was alleged, that in various ways the defendant incurred expense and suffered loss. **Held, first,** that on the basis that the action is by an assignee, the defendant's demand is not one allowable as a counterclaim under the statute, because not one existing in favor of the defendant and against the plaintiff; **second,** that it is not a set-off under the statute, because it is a claim for unliquidated damages, and is not a defense to the demand itself; **third,** that the motion to strike out admits the facts well pleaded in the counterclaim, among others that the New York corporation is the real party in interest; **fourth,** the jurisdiction of equity to allow an equitable set-off is not based on statutes of set-off, but exists independently of them; **fifth,** the motion to strike out in effect admitting that the assignee is only a nominal plaintiff, the non-residence of the real plaintiff in interest is sufficient ground for an allowance of an equitable set-off; and, **sixth,** that, while plaintiff's action is one at law, the answer calls for proper equitable relief and changes it to one in equity, and under the circumstances the right of de-

fendant to fully set up and prove the facts showing its right to an equitable set-off should not be foreclosed by striking out the counterclaim.

Corpus Juris-Cyc. References: **Constitutional Law,** 12 C. J., Section 1012, p. 1238, n. 58 New. **Courts,** 15 C. J., Section 170, p. 851, n. 69. **Judgments,** 34 C. J., Section 1100, p. 717, n. 46 New; Section 1312, p. 902, n. 92; Section 1581, p. 1113, n. 72; Section 1618, p. 1144, n. 84; p. 1145, n. 87. **Pleading,** 31 Cyc., p. 616, n. 25. **Recoupment, Set-Off and Counterclaim,** 34 Cyc., p. 746, n. 66.

Appeal from Circuit Court of City of St. Louis.—*Hon. William A. Wilson,* Judge.

REVERSED AND REMANDED.

*Anderson, Gilbert & Wolfort* for appellant.

(1) The judgment violates the Fourteenth Amendment of the Constitution of the United States. The Supreme Court of New York had no jurisdiction over the Wilder Manufacturing Company; said company was not doing business in New York. Harkness v. Hyde, 98 U. S. 476; Old Wayne Life Assn. v. McDonough, 204 U. S. 8; Riverside Mills v. Menefee, 237 U. S. 189; Goldey v. Morning News, 156 U. S. 518; Conley v. Alkali Works, 190 U. S. 406; Kendall v. Am. Automatic Loom, 198 U. S. 477; Com. Mutual Life v. Spratley, 172 U. S. 602; Painter v. Railroad, 127 Mo. App. 253; In re Kimball, 155 N. Y. 862. (2) Activities of the Wilder Manufacturing Company at the Toy Fair in New York did not constitute doing business in New York. Cheney v. Massachusetts, 246 U. S. 153; Green v. Burlington, 205 U. S. 530; Eastman v. Vehicle Co., 195 S. W. 336; Putney Shoe Co. v. Edwards, 60 Pa. Sup. Ct. 338; Brookford Mills v. Baldwin, 154 App. Div. 553; Gilmer Bros. Co. v. Singer, 149 N. Y. Supp. 195; Mergenthaler Co. v. Hays, 182 Mo. App. 113; Lobe v. Star & Herald Co., 187 N. Y. App. Div. 175; Cody v. Motor Co., 196 Fed. 254. (3) Judgment of a foreign state can be collaterally attacked for want of jurisdiction. If there is no jurisdiction it is void. Pennoyer v. Neff, 95 U. S. 714; Hennings v. Ins. Co., 28 Fed. 444; In re Kimball, 155 N. Y. 62; Central Exchange v. Hammond, 125 Fed. 463; Old Wayne Life Assn. v. McDonough, 204 U. S. 8; Riverside Mills v. Menefee, 237 U. S. 189. (4) Where the facts on which jurisdiction depends are undisputed, jurisdiction is a matter of law and may be collaterally attacked. State ex rel. v. Falkenhainer, 274 S. W. 758; State ex rel. v. Homer, 249 Mo. 65; State ex rel. v. Holtcamp, 266 Mo. 373; State ex rel. v. Caulfield, 245 Mo. 679; State ex rel. v. Shields, 237 Mo. 1047; State ex rel. v. Mills, 231 Mo. 499. (5) A motion to strike out admits the truth of the allegations sought to be stricken. Bogert & Hopper was admitted to be the real party in interest and the assignment was admitted to be fraudulent. No assignee acquires a

greater right than his assign had. Sec. 2161, R. S. 1919. By filing the suit by Bogert & Hopper, the Wilder Manufacturing Company had the right to file a counterclaim. Secs. 1232, 1233, R. S. 1919. Hence, under Section 2161 Bogert & Hopper could not by assignment deprive defendant of that right.

*Grant & Grant* for respondent.

(1) The question of sufficiency of service was a mixed question of law and fact: Where a matter has once been litigated in a court of competent jurisdiction the losing party will not be permitted in another court to litigate the same matter with the same party, even though error might have been committed by the court in the first instance. So also in a suit on a judgment the losing party will not be permitted to attack collaterally the correctness of the decision in the original case. That can be attacked only directly by appeal or by writ of error in that original proceeding. Tootle v. Buckingham, 190 Mo. 195; Harding v. Harding, 198 U. S. 317; LaRue v. Kempf, 186 Mo. App. 70; Sipe v. Capewell, 59 Fed. 970. The question of jurisdiction cannot even be tried twice in the same proceeding. Baisley v. Baisley, 113 Mo. 550; Newcomb v. Railroad, 182 Mo. 687. Where the defendant does not appear and contest the validity of the service, and judgment is rendered against him, he may in any other proceeding attack the validity of that service, as was done properly in Pennoyer v. Neff, 95 U. S. 714, cited by appellant, whether that service was by publication only or by other service in the nature of personal service. Where, however, he appears and contests the question of jurisdiction, that question, once decided, becomes final if unappealed from. Baisley v. Baisley, supra, 550, citing: Hagerman v. Sutton, 91 Mo. 519. And this is true even though the judgment on the issue joined as to jurisdiction was erroneous. (2) The substitution of Hall for Bogert & Hopper, under Sec. 1354, R. S. 1919, was mandatory. Childs v. Thompson, 81 Mo. 337; Spurlock v. Sproule, 72 Mo. 503; Coe v. Ritter, 86 Mo. 287; Springfield to use v. Weaver, 137 Mo. 650. So complete is this substitution that the sureties on a cost bond given by the original plaintiff are discharged when the substitution is made and a judgment for costs against such sureties is an absolute nullity. Ex parte James and Ray, 59 Mo. 280. As Hall, therefore, was a new plaintiff and as the defendant had no counterclaim against Hall, therefore the court was required to strike out defendant's counterclaim on motion, because under the statute a counterclaim must be one in favor of the defendant and against the plaintiff. Sec. 1233, R. S. 1919. The cause of action pleaded in defendant's answer is an unliquidated one for damages for breach of contract. Therefore, it cannot be set off against plain-

tiff's cause of action, even though it might have been set off if the original plaintiff had continued to be plaintiff, for Sec. 1293, R. S. 1919 does not provide for setting off an unliquidated claim against an assignee. Brokerage Co. v. Campbell, 164 Mo. App. 8; Est. Co. v. Arms Co., 110 Mo. App. 406; Volker v. Stone, 181 Mo. App. 311; Bauerdorf v. W. P. Co., 203 S. W. 220. (3) As the Appellate Division of the New York Supreme Court rendered unanimous decision, all six Judges concurring that the service on Bobe was valid under the New York law, and as defendant was satisfied at that time to abide by that decision because it took no appeal to a higher court as it might have done, that decision in this court must be held to express the law of New York on that subject.

LINDSAY, C.—This is a suit brought upon a judgment *in personam*, in the sum of $2,371.10, in favor of Bogert & Hopper, Inc., as plaintiff, against Wilder Manufacturing Company, as defendant, rendered by the Supreme Court of New York County in the State of New York, on September 6, 1921. The errors assigned by defendant fall under two general heads. The first is, that the trial court erred in sustaining the' validity of the judgment rendered by the New York Court, it being the contention that that court did not acquire jurisdiction over defendant, and the second is, that error was committed in striking out the counterclaim set up by defendant.

On September 22, 1921, Bogert & Hopper, Inc., brought suit upon said judgment in the Circuit Court of the City of St. Louis, and service was had upon defendant. Thereafter, Thomas P. Hall asked leave to be substituted as party plaintiff in said cause and such leave was granted, and on February 14, 1922, he, as plaintiff, filed an amended petition in which, after alleging that Bogert & Hopper, Inc., was a New York corporation, he set out the fact of the institution of the action by Bogert & Hopper, Inc., against the defendant in the Supreme Court of New York County, and alleged that said court was a court of general jurisdiction, having jurisdiction of the defendant and of the subject of the action, and that defendant had been duly served with process in said action, and had appeared therein by its duly authorized attorney and attacked the service of process upon it as invalid; that said question was duly litigated in said cause, and that said service had been finally adjudicated to be valid and binding; that judgment was duly rendered in said cause, and that a transcript of such judgment and proceedings, duly authenticated, was filed herein. Said amended petition also alleged the assignment of the judgment to plaintiff, Thomas P. Hall, on the 22d day of December, 1921, and the substitution of him as plaintiff. Afterward, defendant filed its answer, which consisted of a general denial, and also of the further defense that the assignment of the

judgment to plaintiff Hall had been made for the purpose of pre-
venting the defendant from asserting its counterclaim, and that
Bogert & Hopper, Inc., were the real parties in interest, and the
defendant set up its counterclaim, based upon an alleged breach
by Bogert & Hopper, Inc., of a contract for the sale by them of
certain merchandise to defendant, whereby it was alleged the de-
fendant was damaged in the sum of $5,016.10.

The trial court sustained plaintiff's motion to strike out defend-
ant's set-off or counterclaim. A jury was waived, and the cause
submitted to the court, which rendered judgment in favor of the
plaintiff. Upon the trial, plaintiff offered in evidence the transcript
of the proceedings of the New York court. Defendant made the
objection that the record of said proceedings showed that the New
York court did not have and could not acquire jurisdiction over the
defendant; that the defendant was a Missouri corporation, not doing
business in the State of New York, and the service upon it in that
State was void, and that to hold otherwise would violate the due-
process clause of the 14th Amendment of the Federal Constitution.

The transcript, admitted in evidence, shows that the original ac-
tion in the New York court was based upon a trade acceptance of
defendant, given for merchandise sold by Bogert & Hopper, Inc.,
to the defendant. It further showed that the service in that suit was
had upon one Oliver Bobe, secretary and treasurer of the defend-
ant corporation, at the Imperial Hotel in the city of New York;
that thereafter the defendant entered its appearance specially, and
moved the court to set aside the service of summons and complaint
in the action. In support of its motion, defendant filed the affidavit
of said Oliver Bobe, which, after statement that the defendant is a
Missouri corporation having its office and factory in the city of St.
Louis, and having no other office or agency, and that the summons
was delivered to him in the city of New York on February 7, 1921,
is as follows:

"That deponent was in New York at the time the said summons
and complaint were delivered to him for the purpose of attending
the Toy Fair, which is now being held in said city at the Imperial
Hotel; that the Wilder Manufacturing Company, participates once
a year in said fair by placing on exhibition at the rooms in which
said fair is held  samples of its merchandise in common with all
the principal toy manufacturers in the United States. That said
fair is attended by many jobbers and other merchants from all
over the United States and that all of the exhibitors in said fair, in-
cluding the Wilder Manufacturing Company, take such orders as
may be secured from the persons attending the said fair. That none
of the merchandise of the Wilder Manufacturing Company on exhi-
bition at the said fair is for sale and that none of it is sold. That

316 Mo.—52.

every order taken at the said fair by deponent is taken to be for-warded to the office of the Wilder Manufacturing Company at St. Louis and filed at St. Louis, and the credit of the purchaser there approved, and no order taken at the said fair is final or binding until same has been accepted and the credit of the purchaser approved at the company's office in St. Louis.

"Deponent further states that his activity within the State of New York on behalf of the Wilder Manufacturing Company is completely described in the foregoing portion of this affidavit.

"He further states that within the six years during which he has been connected with the Wilder Manufacturing Company that company has had no office or agent within the State of New York, nor has it transacted any business within the State of New York, except those activities above described at the annual Toy Fair.

"Deponent further states that the merchandise which is referred to in the complaint, which was delivered to him as aforesaid, was ordered by mail by the Wilder Manufacturing Company; that the letter ordering the same was written in St. Louis and posted at St. Louis, and that the acceptance which is referred to in the said complaint is payable at the Merchants Laclede National Bank in St. Louis."

The plaintiff, Bogert & Hopper, Inc., in support of the service, filed the affidavit of Thomas P. Hall, its attorney, who deposed as follows:

"That the defendant company, as deponent is informed and believes, has hired room 239 for their exclusive use, at the Hotel Imperial, N. Y. City.

"That deponent called at said room and saw the sign above the door, 'Wilder Manufacturing Company,' and also saw one George A. Bauer, an employee of said defendant company, in charge of said room and the merchandise exhibited for sale therein.

"Deponent has also seen advertisements of the defendant company in trade papers advertising their complete line of toy merchandise at the Hotel Imperial, and deponent is informed that said fair opened on the first day of February, 1921, and continues for a period of six weeks, and deponent has received from said Bauer at said Hotel Imperial this month illustrated catalogue of defendant's merchandise and saw a number of other catalogues there, which were apparently for distribution for the purpose of obtaining orders."

The defendant in further support of its motion filed the supplemental affidavit of said Bobe, which after statement that he had executed the former affidavit, further ran as follows: "That the Wilder Manufacturing Company temporarily rented room 239 at the Imperial Hotel only during the period of the Toy Fair, for the sole purpose of exhibiting its merchandise as samples and not for

the purpose of sale. That the Wilder Manufacturing Company had a small paper sign reading 'Wilder Manufacturing Company' secured temporarily above the door of its room in the same manner as did other exhibitors at the Toy Fair.''

The motion being submitted upon these affidavits was sustained by the trial court and Bogert & Hopper, Inc., took an appeal therefrom to the Appellate Division of the Supreme Court, where the order sustaining defendant's motion was reversed and set aside. Defendant took no appeal therefrom, and did not further appear, and thereafter judgment was rendered in favor of Bogert & Hopper, Inc., and against defendant.

I.   Coming first for consideration in this case is the effect of the fact of express adjudication by the New York court that jurisdiction of the defendant had been obtained in the original suit. The general doctrine, that in a suit brought in one State upon a judgment rendered by a court of another State, the jurisdiction of the court rendering such judgment may be challenged, is **Jurisdiction.** not disputed by counsel for plaintiff. Such is the settled doctrine.   [34 C. J. 1113, 1144; Marx v. Fore, 51 Mo. 69; Stuart v. Dickinson, 290 Mo. 516; Pennoyer v. Neff, 95 U. S. 714; Riverside and Dan River Cotton Mills v. Menefee, 237 U. S. 189.] This doctrine is the result of the harmonious co-existence and relation established by the decisions, between the provisions of Section 1 of Article IV, and Section 1 of Article XIV of the Amendments to the Constitution of the United States. As it is stated in substance in the opinion in the Riverside-Mills case: That which was done in violation of the due-process clause, is not entitled to be enforced under the full-faith-and-credit clause. In this case there is the fact that the question of the jurisdiction of the New York Court over the defendant was directly brought in issue by defendant in that court, and was determined upon evidence submitted by the parties upon that question, and the defendant did not appeal from the adverse ruling of the appellate division. Thereupon, counsel for plaintiff say the question of jurisdiction of the New York court over the defendant, to render the judgment sued upon, was settled, and that such adjudication bars defendant from a reopening of that question, or, under the full-faith-and-credit clause, precludes this court from considering and determining that issue. It is conceded by counsel for plaintiff that if defendant had not appeared specially in the New York court and raised the question of jurisdiction, it would be proper to try the validity of the service in the instant case.

The question whether the New York court had jurisdiction over defendant, was, in reality, the question whether the defendant was doing business in New York, in such a sense as to be subject to or-

dinary suit, and amenable to process issued by the courts of that State. Under the circumstances shown, the New York court could have jurisdiction in the original case only if the defendant was doing business there, so as to make it amenable to the jurisdiction of that court, and the evidence taken was devoted to that issue.

The question whether defendant was so doing business, was not one of local law or of statutory construction, but was one of due process of law under the Constitution of the United States. [Frawley v. Pa. Casualty Co., 124 Fed. 259; Sipe v. Copwell, 59 Fed. (C. C. A.) 970; Tauza v. Susquehanna Coal Co., 220 N. Y. 259; Barrow Steamship Co. v. Kane, 170 U. S. 100; Howard v. Smith (N. Y. Sup. Ct.), 3 Jones and Spencer, 131; Vicksburg Ry. Co. v. DeBow, 148 Ga. 738; Booz v. Texas Ry. Co., 250 Ill. 376.] "Whether such a corporation is doing business in the State is a question of jurisdiction, and in its last analysis it is one of due process of law under the Constitution of the United States." [North Wisconsin Cattle Co. v. Oregon Short Line Co., 117 N. W. l. c. 392.] "But it is only when the foreign corporation is doing business in the State that service may be made upon its agent, and in connection with the questions of jurisdiction it is held that what is 'doing business' is a question of due process of law under the Federal Constitution. Grant v. Cananea Co., 117 N. Y. App. Div. 576; Conley v. Mathiesen Alkali Works, 190 U. S. 406." [Wold v. J. B. Colt Co., 114 N. W. 243.]

The test then in the case before the New York court was not one of local law. It was not the test applicable under a statute prescribing the conditions under which a foreign corporation would be allowed to do business, nor the test to be applied to determine whether the business was interstate or intrastate. The question being one not of statutory or common law of New York, but of jurisdiction, tested by the due-process clause, does the express determination by the New York court that it had jurisdiction, preclude inquiry into that question here?

It is conceded that a special appearance of the defendant did not constitute a general appearance to the action, nor confer jurisdiction over the person of defendant. The contention is that the express adjudication is *res adjudicata,* and cannot be reopened by defendant. It is conceded, indeed it is urged by counsel for plaintiff, that defendant could have taken an appeal from the decision of the appellate division, without such an appeal constituting a general appearance. In support of their contention that the judgment can be attacked, notwithstanding the proceeding had on the motion, counsel for defendant cite Howard v. Smith, 3 Jones and Spencer (N. Y. Sup. Ct.) 131, and Bank of Jasper v. First Nat. Bank, 258 U. S. 112. Howard v. Smith was a suit brought in New York upon a judgment rendered against the defendant in California. There was

no special appearance of defendant in the California court before the judgment was rendered. After it was rendered he appeared specially, and sought to be relieved of the judgment on the ground that the court. had no jurisdiction over him; that the person appearing for him in the California court was unauthorized; and evidence was taken to impeach the authority of those who had appeared for him. The application was denied. Upon the suit on the judgment, which was regular upon its face, the New York court held it would be oppressive and unjust to hold that, although the appearance in California was unauthorized, the defendant was bound by the judgment until he could get it opened in the court where it was rendered, and that, if it was a nullity, it was sufficient for him to show it to be so when it was attempted to be enforced. It was held that the denial of the motion to set aside the judgment did not make the question of jurisdiction *res adjudicata.*

The distinction between that case and this is that in the instant case the defendant is a foreign corporation, and made its special appearance and had an adjudication of the question of jurisdiction by the court, before the court proceeded to final judgment upon the merits. We notice also in this connection the case of Hanna v. Stedman, 230 N. Y. 326.

In Hanna v. Stedman it appears there had been a judgment rendered by a court of New York in a prior action, which proceeded to judgment upon the notice by publication against certain non-resident defendants. That judgment went upon the theory that the proceeding was one *in rem.* The bill of complaint in the cause had some of the qualities of a bill of inter-pleader. It was on the theory that certain money assessed and collected by the defendants, officials of a life insurance association, constituted a specific fund for certain beneficiaries under a policy. Subsequent to the rendition of that judgment, an action was brought in a court of Maryland, involving the same parties and their rights in the same subject. In the action in Maryland, the New York judgment was set up as a bar. The Maryland court determined that the *res* was not in New York; that the New York court had no jurisdiction to render the judgment, and proceeded to render its own judgment as the original and controlling judgment between the parties. Later, upon the subject of the suit, in the action of Hanna v. Stedman, in the New York court, brought upon the first judgment, that court entered into an inquiry as to the jurisdiction of the Maryland court, and of the New York court which had rendered the first judgment, to determine which was the controlling judgment. The conclusion reached was founded upon a determination that under the undisputed facts and form of action, the proceeding was not one *in rem;* that as a fact the *res* was not in New York; that the prior judgment of the New York court was of

no effect, and that the judgment of the Maryland court was valid and controlling. In the course of the opinion (230 N. Y. l. c. 335) it was said: ''It, however, seems to be thought and argued that even though it should be determined now that the action pending in the New York court was not one *in rem* which permitted jurisdiction of a non-resident party to be secured by service by publication, still the decision of that court that it was such an action was a binding adjudication which could not be escaped by the Maryland court. *This of course is not so as to a fact necessary to confer jurisdiction.* A court even of general powers cannot acquire jurisdiction merely by asserting it or determining that it exists. It cannot acquire jurisdiction of the person by asserting and finding his residence within the State when the undisputed facts conclusively show him to be a non-resident. And it cannot for the purpose of acquiring jurisdiction of a non-resident through service of the summons by publication assert and determine that the cause of action before it is of a character which permits jurisdiction by such service when the undisputed facts show conclusively that it is not such an one. The nature of the action in such a case is one of the jurisdictional facts and the court cannot determine in its favor the existence of jurisdiction when there is nothing to support such view. [O'Donoghue v. Boies, 159 N. Y. 87, 97-99; Risley v. Phenix Bank of N. Y., 83 N. Y. 318, 337; Pennoyer v. Neff, 95 U. S. 714, 721; Thompson v. Whitman, 18 Wall. 457, 463, 469; National Exch. Bank of Tiffin v. Wiley, 195 U. S. 257; Haddock v. Haddock, 201 U. S. 562; Reynolds v. Stockton, 140 U. S. 254, 264, 265.]''

Holding that view the New York court examined the sources or grounds of jurisdiction of the Maryland court and of the other New York court, and reached its conclusion therefrom that the Maryland judgment was valid. It held that the original action in the New York court lacked all the fundamental characteristics of a proceeding *in rem*. In doing so it reversed the decision of the Appellate Division (185 App. Div. 491). The Appellate Division had said that the plaintiff in the Maryland suit had merely asked that court to pronounce a decision contrary to the decision of the New York court upon the same facts, and held that the Maryland court could not do so; that it was prohibited by the rule of *res adjudicata*.

Bank of Jasper v. First National Bank, 258 U. S. 112, was a proceeding in *certiorari*. The First National Bank, a Georgia corporation, was indorsee of certificates of deposit made by the Bank of Jasper, a Florida corporation, and brought suit thereon in the Federal district court of Florida. The bank of Jasper in bar of the action, set up the decrees of the State circuit court of Florida in actions brought against both said banks, and certain other parties, wherein the certificates had been held void, and an order and decree

made impressing the deposits in the Bank of Jasper with a trust in favor of the plaintiffs to said actions in the State courts. The Federal district court sustained the plea. The Circuit Court of Appeals (264 Fed. 83) reversed the district court. The Supreme Court of the United States affirmed the action of the Circuit Court of Appeals. The notice or service in the action in the State court was by publication. The First National Bank specially appeared in that action, and attacked the jurisdiction of the State court. Its motion was overruled and it appealed on that issue. It failed upon appeal, and made no further appearance. The Supreme Court of Florida sustained the lower court in refusing to quash the service, and the lower court afterward entered the decree. The Supreme Court of Florida did not pass upon the question whether the appeal operated as a general appearance. It said the purpose of the statute authorizing constructive notice by publication was to notify residents so that if they cared to do so they could come into the case, and if the statute was followed there was no right in the non-resident to quash the notices; that the non-resident had his right to object if error be thereafter committed against him. The facts as stated are somewhat complicated, but it is not necessary to state all of them here, nor all of the points decided by the Supreme Court of Florida, and by the Supreme Court of the United States. The Supreme Court of Florida did not hold that the special appearance, or the appeal from the decision in the question of jurisdiction, constituted a general appearance. It is sufficient upon the question we have under consideration to say that the Supreme Court of the United States considered the question whether there was a *res*, a deposit special in character in the Jasper Bank, whereby the State court could have acquired jurisdiction, and held the deposits for which the certificates were given were not special deposits. The facts considered as tending to show the existence of a *res* in Florida were those pleaded in the bill of the complainants in the action in the State court. It was held that under the facts, there was no *res* within the jurisdiction of the State court, and hence no jurisdiction over the non-resident defendants. In that respect the Supreme Court of the United States placed its own construction upon the conceded facts. It held that the Georgia bank had its common-law remedy unaffected by the Florida decision. It did not refer to the principle of *res adjudicata*, or to any provision of the Federal Constitution.

In cases of this character, the courts have used strong language: "No State can by any tribunal or representative render nugatory a provision of the supreme law." [Old Wayne Mutual Life Assn. v. McDonough, 204 U. S. 8.] There has been used often, the sweeping statement that in these cases the want of jurisdiction may "always" be inquired into. [Thompson v. Whitman, 18 Wall. 468; Stuart

v. Dickinson, 290 Mo. 516; In re Kimball, 155 N. Y. 68; Noyes v. Butler, 6 Barb. 613.]

A case more similar to the case at bar came before one of the appellate courts of Illinois (Cherry v. Chicago Life Insurance Co., 190 Ill. App. 70), which later went to the Supreme Court of the United States on writ of error.    [Chicago Life Insurance Co. v. Cherry, 244 U. S. 25.]    The suit in the Illinois court was one upon a judgment against the Insurance Company rendered by the Circuit Court of Chester County, Tennessee.    The question of jurisdiction over the defendant was raised in the circuit court, and that court held that it had jurisdiction over the defendant, and the defendant appealed from that decision to the Court of Civil Appeals of Tennessee, which had before it and considered the transcript of the record, of the circuit court, including the evidence, and it affirmed the judgment of the circuit court.

In the suit in Illinois upon the Tennessee judgment, the defendant raised the question of jurisdiction of the Tennessee court, and insisted that, regardless of the adjudication by the Tennessee court that it had jurisdiction over the defendants, the same question could be raised whenever and wherever, in any other State than Tennessee, suit was brought on the judgment.    It appears that the Illinois court had before it the proceedings had in the Tennessee court upon the question of the jurisdiction.    The Illinois trial court denied the contention of the defendant, and upon appeal from its decision the Illinois Appellate Court in considering the question presented, distinguished between the various classes of cases wherein the jurisdiction of the court of the sister State had been assailed.    Of these, it was said, there were cases where the court entering judgment assumed jurisdiction, but did not expressly consider, or pass upon the question of its jurisdiction; others where there was a mere recital in the judgment rendered by the court of the sister State that it had jurisdiction; and others which considered the question of jurisdiction by the fact that a defendant might have filed a special application to contest the point of jurisdiction, and when his contention was overruled, had filed answer to the merits of the case.

The Illinois Appellate Court held that in the action upon a judgment of a sister State, where the issue of the jurisdiction of the parties had been raised, and adjudicated after a full hearing in the courts of the sister State, the judgment rendered was *res adjudicata* upon the jurisdictional questions there raised, and such questions could not be raised in the suit upon the judgment.    In the Supreme Court of the United States the Insurance Company claimed that the judgment of the Illinois court violated the due-process clause.    That court, stating reasons for affirmance, said (244 U. S. 29-30):

"The ground upon which the present judgment was sustained by the Appellate Court was that as the issue of jurisdiction over the parties was raised and adjudicated after full hearing in the former case it could not be reopened in this suit. The matter was thought to stand differently from a tacit assumption or mere declaration in the record that the court had jurisdiction.

"A court that renders judgment against a defendant thereby tacitly asserts, if it does not do so expressly, that it has jurisdiction over that defendant. But it must be taken to be established that a court cannot conclude all persons interested by its mere assertion of its own power (Thompson v. Whitman, 18 Wall. 457), even where its power depends upon a fact and it finds the fact. [Tilt v. Kelsey, 207 U. S. 51.] A divorce might be held void for want of jurisdiction although the libellee had appeared in the cause. [Andrews v. Andrews, 188 U. S. 14, 16, 17, 38.] There is no doubt of the general proposition that in a suit upon a judgment the jurisdiction of the court rendering it over the person of the defendant may be inquired into. [National Exchange Bank v. Wiley, 195 U. S. 257; Haddock v. Haddock, 201 U. S. 573.] But when the power of the court in all other respects is established, what acts of the defendant shall be deemed a submission to its power is a matter upon which States may differ. If a statute should provide that filing a plea in abatement, or taking the question to a higher court should have that effect, it could not be said to deny due process of law. The defendant would be free to rely upon his defense by letting judgment go by default. [York v. Texas, 137 U.. S. 15; Western Life Indemnity Co. v. Rupp, 235 U. S. 272, 273.] If without a statute a court should decide as we have supposed the statute to enact, it would infringe no right under the Constitution of the United States. That a party that has taken the question of jurisdiction to a higher court is bound by its decision was held in Forsyth v. Hammond, 166 U. S. 506, 517. It can be no otherwise when a court so decides as to proceedings in another State. It may be mistaken upon what to it is matter of fact, the law of the other State. But a mere mistake of that kind is not a denial of due process of law. [Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co., 243 U. S. 96.] Whenever a wrong judgment is entered against a defendant his property is taken when it should not have been, but whatever the ground may be, if the mistake is not so gross as to be impossible in a rational administration of justice, it is no more than the imperfection of man, not a denial of constitutional rights. The decision of the Illinois courts, right or wrong, was not such a denial. If the Tennessee judgment had been declared void in Illinois this court might have been called upon to decide whether it had been given due faith and credit. [National Exchange Bank v. Wiley, 195 U. S. 257.] But a decision upholding

it upon the ground taken in the present case does not require us to review the Tennessee decision or to go further than we have gone." ·

Upon hearing of the case at bar in the circuit court, plaintiff introduced evidence to the effect that the Supreme Court of New York is a court of record, with general jurisdiction in law and equity, and general jurisdiction over all actions brought by and against domestic and foreign corporations in the State of New York, with power under the laws of that State to determine its jurisdiction over foreign corporations by reason of such corporations transacting business in that State, or by reason of process being served on officers and directors of said foreign corporations in that State. The defendant raises here the precise question which it raised in the New York court, and upon the same evidence. The question of jurisdiction of the New York court over defendant was one proper for determination by that court, defendant having made that issue, and introduced its evidence in that behalf. The defendant could have made default, raised no such issue, and when sued in a court of this State could have challenged the jurisdiction of the New York court over the person of defendant, would not have been bound by a recital in the record that such jurisdiction had been acquired, and would have been permitted to introduce evidence to show that there was no jurisdiction over the person of defendant, and have pronounced the judgment of the Missouri court upon that question.

It is a principle well settled and of general application that where a question proper for judicial determination is directly put in issue, and finally determined in a legal proceeding by a court having competent authority and jurisdiction to hear and determine the question, such decision and determination of the question will be deemed final and conclusive upon the parties and their privies, in all further litigation between them, in which the same question arises, so long as the judgment remains unreversed or is not otherwise set aside. [Baisley v. Baisley, 113 Mo. 550; Harding v. Harding, 198 U. S. 335.]

We are bound in a proper case to give effect to the full-faith-and-credit clause of the Federal Constitution. The defendant having invoked a direct examination of the question of jurisdiction over it in the New York court, had a full hearing upon that question and having permitted an adverse decision to stand, we must give to the decision of the New York court upon that question the same effect as would be given to that determination within the State of New York, or, the same force and effect as if it had been rendered by a Missouri court. [Tootle v. Buckingham, 190 Mo. 183; Harding v. Harding, 198 U. S. 317; Howey v. Howey, 240 S. W. 455.] We have heretofore set out the evidence which was before the New York court, and there is no other evidence here. The New York court having

determined the question upon that evidence, at the instance of defendant, the ruling is not subject to collateral attack here, under the claim that the New York court erred in its opinion. [Tootle v. Buckingham, supra.] "The test of jurisdiction is, whether the court has power to enter on the inquiry, and not whether its decision is right or wrong." [Hagerman v. Sutton, 91 Mo. l. c. 529.]

Having procured the New York court to exercise its power upon the question of jurisdiction over the person of defendant and to enter into an authorized inquiry as to such jurisdiction and directly determine that question before proceeding to judgment upon the merits, the defendant submitted itself to that court for the determination of that question, taking the chance that an adverse ruling, unreversed and not appealed from, would preclude inquiry into the same question when sued upon the judgment in the court of another State. Upon that question and by that court the defendant was given the benefit of "due process" by the submission of the question upon the evidence offered and a hearing thereon in due and orderly manner.

Counsel for defendant say that where the facts upon which jurisdiction depends are undisputed, the question of jurisdiction is one of law, and a collateral attack may be made, citing State v. Falkenhainer, 274 S. W. 758, and the cases cited in the opinion thereon. As has been already stated, the plaintiff pleaded the attack made in the New York court of lack of jurisdiction over defendant, and the hearing and determination of that issue, and to those allegations and all others concerning that judgment defendant's answer was a general denial. But, in a collateral attack upon a judgment of another State, the Missouri rule is that the same rule is applied to such collateral attack as to collateral attack of a domestic judgment. [Howey v. Howey, 240 S. W. 450.] In that case (in Court en Banc) involving the validity of a decree of divorce rendered in Florida, it is said, l. c. 456: "If this be a collateral attack, then under our rule as to judgments from sister States, we must apply our rule of collateral attack in cases involving collateral attack on domestic judgments. Under the Federal law we must treat the judgment of a sister State just as we treat one of our own. Our rule is that if the judgment roll shows a judgment on a subject-matter within the jurisdiction of the court, and shows service upon the defendant, then it is good as against a collateral attack. In other words, if the judgment is to be attacked for infirmities not apparent upon the face of the record, then it must be reached by some direct action." It is further said, l. c. 457: "If we are to measure this judgment of a sister State as we would measure one of our own judgments, then we would have to say that, where the jurisdiction of the court in the particular case is dependent upon extrinsic facts to be shown, the determination of those facts in favor of jurisdiction is final; there being no appeal.

[State ex rel. v. Mills, 231 Mo. l. c. 500, 133 S. W. 22; State ex rel. v. Shields, 237 Mo. l. c. 334, 141 S. W. 585; State ex rel. v. Gantt, 274 Mo. l. c. 510, 203 S. W. 964.]''

If we are going to measure the judgment rendered in New York by the rule applicable to a domestic judgment, then the defendant who sought and had his day in court to procure an express adjudication of the question whether the court had jurisdiction over his person, met with an adverse decision on that issue upon the appeal of the plaintiff, and permitted that decision to stand unreversed and without appeal, cannot have that question reopened upon the ground that the court of the other State erred in its opinion upon the facts submitted. In such a situation we must take the judgment of the New York court at the same value as if rendered by one of our own courts. [Tootle v. Buckingham, 190 Mo. l. c. 195; Howey v. Howey, supra.]

The cases dealing with the subject vary in their facts. In some the proceeding was one *in rem*, and the question was one of jurisdiction in that regard. In others, the defendant, being a person, was served with process, and the question was whether he was subject thereto—the question ordinarily being whether there had been an abuse of the process of the court. Baisley v. Baisley, 113 Mo. 544, involved that question. Numerous cases are discussed in the opinion in Tootle v. McClellan, 103 S. W. 766, 12 L. R. A. (N. S.) 941.

But the question of jurisdiction of the court of another State over a defendant, a foreign corporation, must have a final determination somewhere. When a defendant directly tenders that issue in the first instance to a court authorized to entertain it, and thereby invokes and obtains an adjudication thereon, which he permits to become final so far as the courts of that State are concerned, and without resort to the Supreme Court of the United States under the due process clause to set the same aside, we think the principle of *res adjudicata* applies against him upon the issue so decided, and that full faith and credit must be given to such decision in a suit upon the judgment in another State. Otherwise, there is no reason why the judgment of the latter court should be entitled to greater respect than that of the former court. [Freeman on Judgments (5 Ed.) sec. 1372; Black on Judgments, sec. 901.]

In passing from this subject, and without discussing the question of what constitutes doing business by a foreign corporation in such manner as to subject it to a given jurisdiction, it may be said that the Supreme Court of the United States has announced no rule that is definite and all-embracing. In St. Louis & S. Ry. Co. v. Alexander, 227 U. S. 218, it was said: ''In a general way it may be said that the business must be such in character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction

and laws of the district in which it is served." In Philadelphia & Reading Ry. v. McKibbin, 243 U. S. 264, it was said: "A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the State in such manner and to such extent as to warrant the inference that it is present there." In Peoples Tobacco Co. v. American Tobacco Co., 246 U. S. 79, it was said: "The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the State or district where service is attempted." In some of those cases, and elsewhere, it was said that "each case depends on its own facts." An exhaustive review of those decisions may be seen in the opinion in Farmers & Merchants Bank v. Federal Reserve Bank, 286 Fed. 566. The author of the opinion after considering the concrete facts in each of the many cases, deduces what he conceives to be the rule at the bottom of the decision in each of all of those cases. That rule is stated as follows: "The existence of jurisdiction to determine the personal liability of a corporation in a foreign jurisdiction depends on the reasonableness of its exercise. If it is reasonable that it be exercised it exists. If, on the other hand, it is not reasonable, it does not exist. This fundamental principle lies at the basis of these decisions. In most of them where it was held that jurisdiction did not exist, at bottom, it was because it was not reasonable that it should be exercised. In those where it was held that it did exist, at bottom, it was because it was reasonable that it should be exercised."

II. There remains the assignment that the court erred in striking out defendant's counterclaim. The counterclaim or set-off, as it is also designated in the answer, was one for unliquidated damages based upon the alleged failure of Bogert & Hopper, Inc., to furnish, within a time agreed, certain articles of a designated character for a specific purpose, ordered by defendant from Bogert & Hopper, whereby, it was alleged, that in various ways the defendant incurred expense and suffered loss. There is no allegation that the trade acceptance given by defendant and sued upon in New York by Bogert & Hopper, was given for the merchandise mentioned in the counterclaim; that is, no relation is alleged to exist between the transaction described in the petition in the suit in New York, and the transaction described in the counterclaim. It is not alleged that the assignment of the judgment was fraudulent, but the allegation is that the "assignment was made for the purpose of preventing defendant from asserting said counterclaim, and that said Bogert & Hopper, Inc., are the real parties in interest and still

**Counterclaim.**

the real plaintiffs in this case." It is averred that if the assignment was valid, the defendant was entitled to set off the sum of the counter-claim against any right said Hall may have acquired by the assignment, and if the assignment was invalid defendant is entitled to judgment against Bogert & Hopper, Inc., for the sum of $5,016.10, the amount of the alleged damage.

On the basis that the suit is ,by an assignee, who is the real party in interest, the defendant's demand is not one allowable as a counter-claim under Section 1233, Revised Statutes 1919, because it is not one existing in favor of the defendant and against the plaintiff. [Barnes v. McMullins, 78 Mo. 260; Bauerdorf v. Vose Wall Paper Co., 203 S. W. 220.] On that basis also, defendant's demand is not a set-off under Section 1293, Revised Statutes 1919, which provides that, "In actions on assigned accounts and non-negotiable instruments, the defendant shall be allowed every just set-off or other defense which existed in his favor at the time of his being notified of the assignment." This is so as to its being a set-off, because it is a claim for unliquidated damages. [Barnes v. McMullins, supra; Caldwell v. Ryan, 210 Mo. 17; Brokerage Co. v. Campbell, 164 Mo. App. 8; Scarritt Estate Co. v. Schmelzer Arms Co., 110 Mo. App. 406; State ex rel. v. Eldridge, 65 Mo. 584.]

It is also held that the term "other defense" used in said section is restrictive in its meaning, and refers to a defense to the demand itself, that is, not a defense upon grounds unconnected with the demand sued upon. [Scarritt Estate v. Schmelzer, supra.] The counter-demand here set up is not pleaded as a defense against the demand itself of Bogert & Hopper, but is a claim arising upon a contract not alleged to have any connection with the contract out of which the action of Bogert & Hopper arose. The counterclaim as pleaded seems to be set up alternatively, that is, on the theory that if the assignment to the plaintiff is valid the counter-demand should be allowed as against, or to the extent of the interest of, the plaintiff, and if the assignment be not valid that defendants have judgment for the full amount of their counterclaim.

Counsel for defendant urge that the motion to strike out, which is in the nature of a demurrer, admits the facts well pleaded in the counterclaim. That must be conceded. Under the counterclaim, it is alleged that Bogert & Hopper, Inc., is the real party in interest and still the real plaintiff. Under that theory, the plaintiff Hall would be only a nominal plaintiff.

It has been held that the fact that a set-off is unliquidated, is no bar thereto in equity. [Smith v. Perry, 197 Mo. 460; State ex rel. Motor Car Co. v. Allen, 292 Mo. 367; Strong v. Gordon, 203 Mo. App. 470.] "It is the settled rule that the non-residence of the plaintiff in an action is a ground recognized in equity for permitting the de-

fendant to plead a demand in set-off of the plaintiff's claim, even where the defendant had the opportunity for pleading the set-off as defense to a suit at law." [24 R. C. L. 807; Barnes v. McMullins, 78 Mo. 271.] "And non-residence of one against whom the set-off is claimed, is a sufficient ground to allow an equitable set-off." [Strong v. Gordon, 203 Mo. App. 1. c. 473, and authorities cited.] "Cross-demands and counterclaims, whether arising out of the same or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced by way of set-off whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice." [Rolling Mill Co. v. Oregon and Steel Co., 152 U. S. 1. c. 615.]

The answer of defendant does not plead either that the plaintiff is a non-resident, or that Bogert & Hopper, Inc., is a non-resident, or that Bogert & Hopper, Inc., has no office or place of business in Missouri. The petition of the plaintiff, however, does allege that Bogert & Hopper, Inc., is a corporation organized and doing business under the laws of New York. This court in Nickerson v. Gilliam, 29 Mo. 456, ruled that an equitable set-off could be pleaded against a third person, who was the real party in interest. In that case the matters pleaded in the way of set-off were of the nature of debts, and not of unliquidated damages, and the cross-demand set up against the person alleged to be the real party in interest was stricken out by the trial court. The demands so set up were in the nature of debts. It was held the defendant was entitled to have the benefit of his set-off in that suit. In Reppy v. Reppy, 46 Mo. 571, the plaintiff was alleged to be not the real party in interest, and cross-demands were sought to be set up against the real party in interest, the answer being framed, it was said, "upon the theory of an equitable defense or counterclaim," and by way of reduction or satisfaction of amounts due on the notes sued upon by the plaintiff, and the plaintiff was alleged to be insolvent. It was said that in "equity at least, the title may be treated as in the real owner." Some of the demands pleaded by the defendant seem to have been unliquidated. It was held to be error to strike out the counterclaim. It was said, 1. c. 573: "In regard to a set-off or counterclaim, equity usually follows the law, but not always. When an insolvent plaintiff is suing, equity will take jurisdiction of unliquidated claims, and allow offsets which would not be allowed at law. [Waterman on Set-off, 80, note, and 371-2, note; Bradley v. Angell, 3 Comst. 475; Ainslee v. Boynton, 2 Barb. 253.] But a demand cannot be set off in equity any more than at law, unless it existed against the plaintiff, in favor of the defendant, at the time of the commencement of the suit, and had then become due. [Waterman on Set-off, 427, par. 381.]"

In Barnes v. McMullins, 78 Mo. 260, the suit was upon a non-negotiable note given to one Pence, and by him assigned to the plaintiff. The counterclaim was not one arising upon contract, but founded upon a tort alleged to have been committed by the plaintiff, and Pence who was alleged to be a non-resident and insolvent. It was held that the counterclaim was properly stricken out, but this was on the ground that it was not a demand arising upon contract. On the way to that conclusion, it was pointed out that the jurisdiction of equity to grant relief in a proper case was of ancient origin and existed prior to any statute to that effect, and still existed, independent of any statute, and that the insolvency or non-residence of the real party in interest was generally accepted as sufficient ground for equitable relief of some kind. It was said that the persuading principle in such cases was not so much the inconvenience and circuity of two actions, as the injustice to the defendant of compelling him to pay the plaintiff's demand under execution, and of his taking the uncertain chances due to the insolvency of the plaintiff's assignor. The non-residence of the assignor might be a consideration equally cogent. The learned writer of the opinion said, l. c. 272: "I am not aware that this equitable control over cross-demands has ever been invoked in this State in favor of unliquidated legal demands. Cogent reasons readily occur to the mind against an extension of the doctrine. It involves an assessment of damages before the set-off can be decreed. This is an undertaking which equity avoids whenever it can. Then again, the assessment may result in nothing or perhaps a very small sum to be offset against the plaintiff's demand, and the injustice of holding the plaintiff's demand in abeyance for so uncertain an event must often fall on him. Notwithstanding these reasons it may plausibly be argued that as the law now allows unliquidated demands arising on contract to be offset one against the other under the name of counterclaim, equity ought to follow the law, and in cases of insolvency or non-residence of the plaintiff's assignor, furnish relief in like manner as in liquidated cross-demands. When the unliquidated demand of the defendant is of an equitable character, such as the right to a prospective balance in an unsettled partnership, some of the reasons against the exercise of equitable jurisdiction, such as the assessment of damages by a chancellor, are obviously wanting. Whether equity would in this State help the defendant in asserting such a right by way of counterclaim, has been touched upon but not decided."

In Smith v. Perry, 197 Mo. 438, it was held that an unliquidated demand might be made the subject of set-off in a court of equity. It was said, l. c. 459: "Cross demands and counterclaims, whether arising out of the same or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced by way of set-

off whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice.''

In State ex rel. Motor Co. v. Allen, 292 Mo. 360, in Court en Banc, and upon *certiorari*, a contention of relator appears to have been that equity would not extend its jurisdiction to sustain as a set-off a sum so uncertain as to require a jury to be empaneled to liquidate it. The question before this court was whether the ruling of the court of appeals in the original case conflicted with the rulings of this court, and more especially with the ruling in Barnes v. McMullins. It was found, however, and stated that the claim sought to be a set-off had been in fact reduced to judgment before being pleaded as a set-off; but, while that was so, and it was concluded there was no conflict with the decision in Barnes v. McMullins or any other deci-- sion of this court, the decisions in Reppy v. Reppy, Smith v. Perry and certain others, were referred to (1. c. 369), and those decisions were held to ''constitute authority for the proposition that unliquidated claims may be enforced by way of set-off whenever the circum-: stances are such as to warrant the interference of equity.'' Also· it was pointed out that the disposition made in Barnes v. McMullins rested upon the fact that the counterclaim there sought to be estab-· lished, was not one arising upon contract.

In Strong v. Gordon, 203 Mo. App. 470, the suit was on two prom-· issory notes. The cross-bill of defendant admitted the execution of the notes, but alleged that the plaintiff had no real interest in them; that the real owner was the plaintiff's son, who was a non-resident of this State and who had no property in this State subject to execution; the plaintiff's son was indebted to defendant on account of a partnership which formerly existed between him and the defendant, and that no accounting had been had between them. An accounting was asked of the affairs of the partnership, the set-off of the amount to be found due to defendant thereunder, with a general prayer for equitable relief. The trial court sustained the plaintiff's motion for judgment upon the pleadings. Discussing the general principles applicable, the court said, 1. c. 472-473: ''While the suit, as instituted, is an action at law, yet under our code, an answer calling for proper equitable relief will change the case into one in equity; and the jurisdiction of equity to allow an equitable set-off is not based upon any statutes of set-off, but exists independently of them; and thus, by the exercise of this equitable jurisdiction, courts are enabled to do justice between the parties in cases not strictly within the statute. [24· R. C. L. 803-4, par. 12.] The doctrine of set-off whether legal or equitable, is essentially a doctrine of equity. [24 R. C. L. 799, par. 9.] Furthermore, the fact that the set-off is unliquidated, is no bar thereto in equity. [Smith v. Perry, 197 Mo. 460; Schwartz v. Harris,

316 Mo.—53.

206 Fed. 939.] And even though the debts arise out of or accrue in different rights, this will not prevent an equitable set-off. [24 R. C. L. 865, par. 70.] And non-residence of the one against whom the set-off is claimed is a sufficient ground to allow an equitable set-off. [Platner Imp. Co. v. Bradley, 40 Colo. 95; North Chicago Mill Co. v. St. Louis Ore Co., 152 U. S. 615, 616; Caldwell v. Stevens, 167 Pac. 610; McIntyre v. Forbes Piano Co., 100 Miss. 517; Arnold v. Carter, 125 Ga. 324; Abernathy v. Myer-Bridges Coffee Co., 100 S. W. 862; Pietrowski v. Czerwinski, 138 Wis. 396; Porter v. Roseman, 165 Ind. 255; Ewing Merkle Electric Co. v. Lewisville Light Co., 92 Ark. 594.]''

In the case at bar, the present plaintiff has become such by the alleged assignment, and by substitution, pending the suit. In the Strong case, the disposition made by the court upon appeal, and the accompanying suggestions in reversing and remanding the cause, are stated as follows: l. c. 474: ''But it is urged that plaintiff cannot compel her son, Louis L. Strong, Jr., to become a party to the suit and enter into an accounting with defendant. But, if Louis L. Strong, Jr., is the real owner of the notes, as the answer alleges, no doubt he will, indirectly be compelled to do so or risk losing a large part of his notes, although the court may not have any power to directly compel him to become a party. No doubt this is the greatest practical difficulty in the matter of permitting the setting up of this unliquidated claim as an equitable set-off. Nor can future developments be anticipated. It might become advisable for the chancellor, under the general prayer for equitable relief, to merely defer entering judgment until defendant has had a reasonable time to secure an accounting and thereby have his demand liquidated, and credited on the amount due on the notes when judgment is finally rendered, and to restrain further proceedings on the notes until an accounting has been had. Such procedure has been adopted in certain circumstances. [24 R. C. L. 807, 857-8, par. 61.] At any rate, we do not think defendant's right to an equitable set-off should be at once foreclosed by a judgment on the pleadings.''

In the case at bar, the defendant has not, in a direct way, invoked the equitable jurisdiction of the court, but, under the circumstances appearing in the record we do not think that in this case the right of the defendant to fully set up, and prove any and all facts showing a right to an equitable set-off, should be foreclosed by an affirmance of the action of the court in striking out the counterclaim, but, that the judgment should be reversed and the cause remanded with leave to defendant to file other pleadings if desired, for such action thereon by the trial court as may be proper under the issues devel-

oped, and as near as may be in accordance with the rulings heretofore made and referred to. *Seddon. C.,* concurs.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.,* not sitting.