Kree Jack RACINE, a/k/a Joe Karek,
Plaintiff-Appellant,

v.

BLACKWOOD BROTHERS QUARTET,
INC., a Corporation, and James Black-
wood, Defendants-Respondents.

No. 33397.

St. Louis Court of Appeals.

Missouri.

Dec. 16, 1969.

Tremayne, Lay & Carr, Donald W. Paule, Clayton, for plaintiff-appellant.

Green, Hennings, Henry & Arnold, St. Louis, for defendants-respondents.

DOERNER, Commissioner.

The primary question presented in this appeal is whether defendant Blackwood Brothers Quartet, Inc., a foreign corporation not licensed to transact business in this state, is doing business in Missouri so as to be amenable to personal service which will support the rendition of a general judgment against it. We hold that it is.

The factual background is to be found in the plaintiff's amended petition, the defendant corporation's motion to dismiss and supporting affidavit, and defendant James Blackwood's motion to dismiss. From these it appears that defendant Blackwood Brothers Quartet, Inc., is a corporation organized and existing under the laws of the State of Tennessee, whose only office is located in Memphis, Tennessee. Its regular and ordinary business consists of the giving of musical performances and the sale of records and books, including the book titled "Above All," of which more anon. None of the officers, directors, stockholders, or employees of the defendant corporation resides in the State of Missouri, and the company's name is not listed in any city directory or telephone book of any Missouri city. According to the affidavit of defendant James Black-

wood, president of the defendant company, the corporation entered into agreements requiring the Blackwood Brothers Quartet to give nineteen single-night performances, between March 16, 1966 and February 10, 1968, in such diverse places throughout the state as Kansas City, St. Louis, Springfield, St. James, Moberly, Sikeston, Marionville and Poplar Bluff.

Negotiations between plaintiff and the defendant corporation for the contract in question were begun at some unstated time prior to September 29, 1966. Such negotiations were handled by mail, by telephone, and by conferences held in Memphis. No officer, stockholder or other representative of the corporation came to Missouri to discuss the proposed contract. Other than the foregoing, the record is not clear as to where the written agreement, dated September 29, 1966, was executed, but there are indications that it was first signed by plaintiff, next by the defendant corporation, and a copy then returned to plaintiff, presumably by mail. Since the provisions of that agreement are not relevant to the primary issue presented it is sufficient to say that its terms provided that plaintiff was to write a book, subsequently titled "Above All," about the lives of the Blackwood brothers, for which the defendant corporation was to pay him certain stipulated sums as well as a share of the profits. In essence, plaintiff's complaint is that the defendant corporation failed and refused to pay him his share of the profits of the book, for which, in Count I, he seeks an accounting and judgment, and in Count II, a decree directing the company to assign the copyright of the book to him.

Personal service was obtained on defendant James Blackwood and on the defendant corporation by serving its president, James Blackwood, in the City of St. Louis, on February 10, 1968, the date on which one of the performances mentioned was being given. Defendant Blackwood Brothers Quartet, Inc., filed its motion to dismiss (and refiled it after plaintiff filed his

amended petition), which we quote at length:

" 'Comes now defendant Blackwood Brothers Quartet, Inc. and moves the Court to dismiss Counts 1 and 2 of the petition filed herein for the reason that this defendant is not doing business in the State of Missouri and is not subject to service of process in the State of Missouri.' "

James Blackwood, the individual defendant, filed a motion to dismiss on the ground that the defendant corporation was a necessary party to the case and that the court did not have jurisdiction over the person of said defendant corporation. Both motions were sustained, and after an unavailing motion for a new trial plaintiff's appeal followed.

■ The difficulty we experience with this case is not with the primary issue presented, but with the question of our jurisdiction. The mere fact that service is had in this state upon an officer of an unlicensed foreign corporation is not sufficient to invest our court with jurisdiction to render a personal judgment against the corporation. Collar v. Peninsular Gas Co., Mo., 295 S.W.2d 88. Such a corporation becomes amenable to personal service in Missouri so as to permit the rendition of a general judgment against it only if it is "doing business in this state." State ex rel. Ferrocarriles Nacionales De Mexico v. Rutledge, 331 Mo. 1015, 56 S.W.2d 28, 85 A.L.R. 1378, cert. den. 289 U.S. 746, 53 S. Ct. 689, 77 L.Ed. 1492. And it has repeatedly been held by our Supreme Court that whether such foreign corporation is "doing business in this state" within the contemplation and meaning of the stated principle is a question "* * * of due process of law, under the Constitution of the United States * * *" and is "* * * not one of local law or of statutory construction * * *," Hall v. Wilder Mfg. Co., 316 Mo. 812, 293 S.W. 760, 762, 52 A.L.R. 723; State ex rel. Ferrocarriles Nacionales De Mexico v. Rutledge, supra; State ex rel.

Nashville, C. & St. L. Ry. v. Hall, 337 Mo. 1229, 88 S.W.2d 342; Collar v. Peninsular Gas Co., supra. Relying on that principle, it was said in a case on all fours with the present one that even though the constitutional question had not been raised by the defendant corporation the issue of due process under the Federal Constitution was inherently involved, and the action of this court in transferring the appeal to the Supreme Court was approved. Wooster v. Trimont Mfg. Co., Mo.App., 197 S.W.2d 710 transf. to 356 Mo. 682, 203 S.W.2d 411.

■ However, the doctrine under which the jurisdictional question was ruled in Wooster, known as the "inherency doctrine," Washington U. Law Quarterly, Vol. 1964, p. 467, § 1.022(d), which had been followed for nearly forty years, was expressly rejected and overruled in City of St. Louis v. Butler Co., 358 Mo. 1221, 219 S.W.2d 372, decided by the Supreme Court en Banc. And since that opinion was handed down it has been the rule in this state that in order to preserve a constitutional question for appellate review: (1) the question must have been raised at the first opportunity; (2) the constitutional provision claimed to have been violated must have been specified; (3) the point must have been preserved in the motion for new trial, if any; and (4) it must have been covered adequately in the appellate briefs. City of St. Louis v. Butler Co., supra; Ingle v. City of Fulton, Mo., 260 S. W.2d 666; Magenheim v. Board of Education of Sch. Dist. of Riverview Gardens, Mo., 340 S.W.2d 619.

■ Unlike the corporate defendant in Morrow v. Caloric Appliance Corporation, Mo.App., 362 S.W.2d 282 transf. to 372 S. W.2d 41, in the case before us the defendant corporation did not allege that for our Missouri courts to assume jurisdiction over the defendant corporation would constitute a violation of the defendants' rights under the due process clause of the Federal Constitution. In its motion to dismiss, it did,

however, allege that it is not "doing business in this state" and that it is not subject to service of process in the State of Missouri. Thus the *only* question decided by the trial court, and the *only* issue presented by this appeal, is whether the defendant corporation was "doing business in this state" so as to make it amenable to personal service and the rendition of a general judgment against it. Our dilemma arises from the fact that on the one hand we are confronted with the foregoing line of cases which hold that whether a foreign corporation is "doing business in this state" is a question of due process of law, under the Federal Constitution, and is not one of local law or of statutory construction, "* * * by reason of which our Supreme Court is invested with exclusive appellate jurisdiction of this appeal. Art. V, Sec. 3, Const. of Missouri, 2 V.A.M.S." Morrow v. Caloric Appliance Corp., Mo., 362 S.W. 2d 282, 284; and on the other with that line of cases which hold that a constitutional question has not been preserved for appellate review unless the four requirements above mentioned have been satisfied, which was not done in the present case. In view of the tendency to strictly enforce the latter rule, State of Missouri ex rel. Chicago, Rock Island and Pac. R. Co. v. Public Service Commission, Mo., 429 S.W. 2d 723, we retain jurisdiction of this appeal.

While we have some misgivings regarding our jurisdiction we entertain none regarding the primary question presented. As this court pointed out in Filmakers Releasing Organization v. Realart Pictures of St. Louis, Inc., Mo.App., 374 S.W.2d 535, cases involving the question of whether an unlicensed foreign corporation is doing business in a state fall into three categories: whether or not the foreign corporation is subject to the state's taxing jurisdiction; whether or not the corporation has subjected itself to the regulation or qualification statutes of the state; and whether or not the foreign corporation is subject to the process of the court within the state. We are here concerned only with the last category, and we agree with both parties that the proper test to be applied in this type of case is that stated in Collar v. Peninsular Gas Co., Mo., 295 S. W.2d 88, 91: " 'While no all-embracing rule has been laid down as to what constitutes doing business by a foreign corporation so as to make it amenable to personal service of process within a given jurisdiction and a solution of the question depends upon the facts of the particular case, yet the general rule is recognized that to constitute "doing business" the foreign corporation must have entered the state and engaged there in carrying on and transacting, through its agents, the ordinary business in which it is engaged * * *'."

Here the ordinary business in which the defendant corporation is engaged is the giving of musical performances and the sale of records and books. It concedes that during the period of approximately 23 months immediately preceding the institution of plaintiff's suit the defendant corporation gave 19 musical performances in 8 different cities throughout the state. Thus, as pointed out in Morrow v. Caloric Appliance Corp., Mo., 372 S.W. 2d 41, 47: "We are not here concerned with a single or isolated act or transaction but, under the facts, with a continuous course of business. * * *" And we hold, as in that case, that the defendant corporation, having entered this state and engaged therein in carrying on its ordinary business to the extent stated, was amenable to personal service of process in the instant action. Hence, its motion to dismiss should have been overruled.

Having reached that conclusion it logically follows that the court also erred in sustaining the motion of defendant James Blackwood to dismiss on the ground stated in his motion.

The order and judgment of the trial court should be reversed and the cause remanded. It is so ordered.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, order and judgment reversed and cause remanded.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.