**JOS. RIEDEL GLASS WORKS, Inc., v. KEEGAN.**

No. 67.

District Court, D. Maine, S. D.

Feb. 5, 1942.

PETERS, District Judge.

This action is on a judgment rendered February 1, 1940, by the Supreme Court of New York against the defendant Keegan, a Maine citizen. It is based on a decree finding Keegan guilty of contempt of court and assessing damages, under Section 924 of the New York Civil Practice Act, for interposing a false claim to property in the possession of a sheriff who held it under a warrant of attachment in a suit in favor of the plaintiff, against Francis W. Kurtz & Co., Inc., a New York corporation, of which Keegan's son was an officer. A fine of $7,500 was imposed for presenting the false claim and interfering with the attachment, and the fine was ordered by the Court to be docketed as a judgment in favor of the plaintiff against Keegan.

The defendant here, in answering to the suit on the judgment, denies the jurisdiction of the New York Court to issue it, and, in an amendment to his answer, alleges that the judgment, being in the nature of a fine and penal in character, cannot be enforced extraterritorially. It is also alleged that the plaintiff has received $2,500, in partial satisfaction of the judgment, from another source. The supplemental answer was allowed to be filed after the pre-trial hearing and the order thereon, which order should be considered as amended by permitting the additional issues to be raised.

The evidence is almost wholly documentary, in the form of copies of the records in the Supreme Court of New York in the suit of the plaintiff here against Kurtz & Co. From this evidence I find the following facts, which must be recited somewhat in detail to clarify the questions involved.

In 1938 Jos. Riedel Glass Works Inc. brought a suit against Kurtz & Co. on an account for goods sold and delivered, and attached machinery and other personal property of the defendant. A few days later Keegan, the defendant here, filed an affidavit with the sheriff claiming title to the attached goods under a chattel mortgage from Kurtz & Co. On this claim appropriate proceedings were had under Section 924 of the New York Civil Practice Act [1] (pertinent language from which is set forth in the margin hereof), resulting in

Sidney W. Wernick and Jacob H. Berman, both of Portland, Me. (Barnett L. Kulak, of New York City, of counsel), for plaintiff.

Robert Hale, of Portland, Me., and Edward R. Parent, of Lewiston, Me., for defendant.

[1] "If personal property, other than a vessel, attached, seized or levied upon, as the property of the defendant, is claimed by or in behalf of another person, as his property, an affidavit shall be made and delivered to the sheriff, on behalf of such person, at any time while such property or the proceeds thereof, in case the prop-

a finding by an official referee, confirmed by the Court, that the Keegan mortgage was void as to the Glass Works and its attachment. Whereupon, on June 2, 1939, the Glass Works, alleging that the claim filed by Keegan was falsely and fraudulently filed, moved the Court for a show-cause order, stating that Keegan "should be punished for a wilful contempt of Court, and that the matter be set down for a hearing for the purpose of assessing the damage did to the plaintiff, and that the said claimant(s) be fined in a sum treble the amount of the damage did to the plaintiff in accordance with Section 924 of the Civil Practice Act". The affidavit supporting the motion stated that Keegan was a resident of Maine and asked for notice to him by registered mail.

On June 5, 1939, a show-cause order on the above motion was issued returnable June 15, 1939, with directions to serve upon Keegan in Maine by registered mail, and such service was made.

On June 20, 1939, Solomon Goldman, Esq., as attorney for Keegan, filed a motion that the proceedings be dismissed as to Keegan, on the ground that the Court had no jurisdiction of his person, and could not obtain such in a contempt proceeding by a registered mail notice to a non-resident. He alleged that the procceding brought under Section 924 of the Civil Practice Act to determine the title to the property claimed under the mortgage had been concluded by the final order entered therein with no adjudication that the claim of Keegan was false or fraudulent.

On July 26, 1939, the Court,—Mr. Justice Carew,—made the following memorandum: "The falsity of the claim presented not having been specifically decided by Referee Weil, it will be returned to him to take testimony and report his opinion as to whether or not the respondent falsely presented his claim to the sheriff and the damage done to the plaintiff".

On August 3, 1939, a formal order was entered by Mr. Justice Carew, reciting the motion that Keegan and one Inga Wichgraf (alleged to be implicated with Keegan) be punished for contempt, referring to the affidavits and motions filed in behalf of the respondents submitted in opposition to the motion, and directing that "the matter is hereby referred to the Hon. David L. Weil, Official Referee, to take testimony and report as to whether or not the respondents, Benjamin H. Keegan and Inga Wichgraf,

---

erty shall have been sold, are in the sheriff's possession, stating that he makes such a claim; specifying in whole or in part the property to which it relates, and in all cases stating the value of the property claimed and the damages, if any, over and above such value, which the claimant will suffer in case such attachment, seizure or levy is not released. In that case, the sheriff, in his discretion, before he sells such property, or in case the property has been sold, before paying out the proceeds from the sale thereof, may serve upon the plaintiff's attorney a copy of the affidavit, with notice that he requires indemnity against the claim. If the indemnity is not furnished within three days after the demand has been made by the sheriff, the sheriff, in his discretion, may deliver the property, or the proceeds, as the case may be, to the claimant, without incurring any liability to the plaintiff by reason of so doing; unless within three days after demand for indemnity the plaintiff shall institute a proceeding for the purpose of having the title to the claimed property or the proceeds thereof, determined. The court, or judge, before whom the proceeding is brought, shall hear and determine the title thereto, and for that purpose the judge hearing the proceeding, may, in his sole discretion, impanel a jury. If a jury is impanelled, the plaintiff shall advance the costs and expenses thereof which shall be fixed by the judge hearing the proceeding. If, by such proceeding it is determined that the property belongs to the claimant, it shall be delivered to him and the sheriff shall be released thereby, from all claim for damages. If by such proceeding it is determined that the attachment, seizure, levy or sale was valid, the sheriff shall proceed thereunder and shall be released from all liability to the claimant by such determination. Within five days after the entry of the order in such proceeding, any party thereto, upon notice to the other party or parties, may apply to the court or judge for a stay, or may give an undertaking to stay further proceedings, pending appeal. Such undertaking shall be not less than twice the amount of the claimed value of the property and damages. A person who shall falsely or fraudulently make a claim as prescribed herein may be punished as and for contempt of court and shall be liable in treble damages to the party injured thereby."

falsely presented their respective claims to the sheriff of Queens County and the damage done to the plaintiff".

On October 18, 1939, Goldman, as attorney for Keegan, "appearing specially and for the purpose, and only for the purpose, of moving to set aside the service of the order to show cause * * * on the ground that this Court has no jurisdiction of the person of the claimant because the service of the order to show cause was defective", moved that the proceeding be dismissed for lack of jurisdiction, stating that "No previous application has been made for the relief herein to any Court or Judge, except that Justice Carew was informed of the manner of service of the aforesaid order to show cause by my affidavit of special appearance as aforesaid".

On this application there was an order of court directing the Glass Works to show cause why an order should not be issued vacating the service of the order of June 5, 1939, made on Keegan.

On October 23, 1939, Mr. Justice Miller disposed of the Goldman motion and affidavits annexed thereto and answering affidavits, with the following memorandum: "The contentions made by the movant were presented to Mr. Justice Carew and overruled by him. The present motion seeks, in effect, to review the order of Mr. Justice Carew. Motion denied."

On November 6, 1939, hearings began before the official referee, Mr. Weil, pursuant to the order of Mr. Justice Carew of August 3, 1939, and on December 4, 1939, the referee made his report, incorporating his previous findings as to the invalidity of the Keegan mortgage and finding further that Keegan, in assisting his son W. O. Van Keegan, the president of Kurtz & Co. Inc., in an attempt to defeat the attachment referred to, had filed a void claim under which some of the attached property had been taken away from the sheriff. The minutes of the proceedings in the hearing before the referee were filed with his report.

On January 31, 1940, Mr. Justice Carew filed findings of fact and conclusions of law upon which the order or decree in question, fining Keegan $7,500 and directing that it be entered as a judgment in favor of the plaintiff, was issued. The seventh finding of fact was "That the claim interposed by the claimant Benjamin H. Keegan, as aforesaid, was an invalid and fictitious claim and was made falsely and fraudulent-

ly at the request of William O. Van Keegan and under his guidance and direction".

The seventh conclusion of law was as follows: "That the said Benjamin H. Keegan by interposing his sworn affidavit of claim herein with the Sheriff of Queens County, and by submitting his verified pleadings in this Court, and otherwise invoking the aid of this Court, under Section 924 of the Civil Practice Act, and by his other proceedings herein, voluntarily submitted his person to the jurisdiction of this Court and was subject to all proceedings prescribed by the said Section 924 of the Civil Practice Act and all the rights and remedies accruing thereby and thereunder during the course of the proceedings herein, and as a result thereof, and this Court therefore has jurisdiction of the person of Benjamin H. Keegan. That the said Benjamin H. Keegan by his attorney also generally participated in the hearing before the Hon. David L. Weil on the 6th day of November, 1939".

The extent of the participation of Mr. Keegan and his attorney in the proceedings in New York appears to have been as follows:

On October 6, 1938, Keegan filed in New York his claim to the goods under attachment in the suit of the Glass Works against Kurtz & Co. Thereupon the plaintiff in that suit, denying the validity of the claim, acting under the authority of Section 924 of the New York Civil Practice Act, as already stated, applied to the Court for a determination of its validity. To this Keegan filed a verified answer in support of his claim and the matter was referred to the referee. Keegan appeared as claimant before the referee in New York and testified at the hearing.

On or before July 26, 1939, before Mr. Justice Carew on the motion that Keegan be required to show cause why he should not be held in contempt for filing a false claim, Goldman appeared specially for Keegan and argued his motion for a dismissal of the proceeding for lack of jurisdiction, on the ground that the proceeding was a new one,—as the proceeding to try title had been closed and terminated,—and that the contempt proceeding being a separate one required personal service on the defendant to bring him within the jurisdiction of the Court.

On September 1, 1939, Goldman, as attorney appearing specially for Keegan, filed notice of an appeal from the order of

August 3, 1939, as he put it "granting in part plaintiff's motion to hold the claimant Benjamin H. Keegan in contempt of Court and to assess damages".

On October 11, 1939, the Appellate Division of the Supreme Court dismissed the appeal "after hearing Mr. Barnett L. Kulak for the motion and Mr. Solomon Goldman opposed", with a stipulation added for the filing of an undertaking for costs in the event of the affirmance of the order appealed from.

On November 6, 1939, at the second hearing before the referee, Goldman appeared specially for Keegan. He offered no evidence and cross-examined no witnesses. He did object to evidence offered against Keegan for different reasons; on the ground that the evidence was not admissible as in a conspiracy case; that statements of counsel should not be considered evidence unless proved; that testimony as to the removal of the attached property from the possession of the sheriff was not admissible before proof was presented as to what property was attached. He asked that statements be struck from the record and denied statements that had been made. He consented to certain evidence being introduced in the form of a photostat. He objected to a witness testifying from a deposition until he, Goldman, examined it, whereupon he waived objection. He also objected to the order of testimony. At the close of the testimony for the plaintiff, when plaintiff's counsel said that he rested, the referee asked Goldman whether he rested and he said that he did and would like to make a statement; whereupon he stated that he objected to all the testimony on the ground that the Court had no jurisdiction over Keegan. In his argument he stressed again two points,— that the proceeding to try Keegan's title was a separate one that had been closed, and that new and personal service was required in the contempt proceeding to give jurisdiction. After the argument, Goldman asked permission to submit a memorandum and was given two days to do so. The referee stipulated that the brief should be on the question of jurisdiction only.

I find as an additional fact that while the proceeding against Keegan for contempt of Court was pending the Glass Works brought an action in New York on the sheriff's bond and recovered, by settlement, $2,500 damages for the wrongful releasing of a part of the goods attached in the suit against Kurtz & Company, the Glass Works reserving rights against any other tort feasors.

This release of goods seems to have been made at the instigation of the son, Van Keegan, upon presenting the affidavit of his father as to the mortgage claim. The Glass Works alleged that the sheriff's neglect resulted in its failure to collect its judgment against Kurtz in the sum of $4,678.51.

The above findings of fact are intended to be a summary of the principal facts pertinent to the questions raised by the parties. The facts, as heretofore stated, are taken from papers filed in the New York court. The summary is necessarily not complete or exclusive of other facts appearing in the New York records which are in evidence here. The exclusion from this summary of any such other facts should not prejudice either party on appeal, as the record will speak for itself.

I have reached the following conclusions of law on the evidence before me.

 The defendant, who is sued here on a judgment rendered by the Supreme Court of New York, defends first on the ground of lack of jurisdiction of that Court over the person of the defendant. Such a defense of course is open,—unless the question has been previously decided,—as is held by a long line of decisions including, Rose v. Himely, 4 Cranch 241, 2 L.Ed. 608; Thompson v. Whitman, 18 Wall. 457, 21 L.Ed. 897; Chicago Life Ins. Co. v. Cherry, 244 U.S. 25, 37 S.Ct. 492, 61 L.Ed. 966.

The defendant's objection to the authority of the Supreme Court of New York to render the judgment is based on alleged failure to make personal service upon him, he being a non-resident of New York and a citizen of Maine. The plaintiff, however, does not rest upon the service actually made, which was merely a notice sent by mail, but relies (a) upon the effect of voluntary acts of the defendant in connection with the proceedings in New York, as constituting submission to the jurisdiction of the Court in which they were pending, and (b) upon the alleged submission of this question of jurisdiction by the defendant to the Court in New York and its conclusion thereon as res adjudicata.

 The defendant makes the point that in a proceeding to punish for con-

tempt under Sec. 924· of the New York Civil Practice Act personal service is indispensible, when the facts are as here, and cites Billingsley v. Better Business Bureau, 232 App.Div. 227, 249 N.Y.S. 584. The decision in that case, however, referred to criminal contempt, and I do not regard the case involved here as a matter of criminal contempt. It is difficult to draw a line of demarcation, but it seems certain that if a proceeding for contempt is to enforce a remedy in a civil action, as this was, it is a civil and not a criminal contempt. 17 C.J.S., Contempt, § 62. In this very case in New York the Supreme Court of New York, Appellate Division, has referred to the acts performed by Keegan and his associates as civil contempt. Jos. Riedel Glass Works, Inc., v. Francis W. Kurtz & Co., Inc., et al., 260 App.Div. 163, 20 N.Y.S.2d 938.

I do not think the point well taken.

On the question whether, by any action on his part, the defendant submitted himself to the jurisdiction of the Supreme Court of New York which rendered the judgment, it is necessary to consider what sort of acts have such an effect.

■ The rule seems to be that any action on the part of a defendant,—except to object to the jurisdiction over his person,—which recognizes the case as in court, will constitute a general appearance. 6 C.J.S., Appearance, § 13; Mass. Bonding & Ins. Co. v. Concrete Steel Bridge Co., 4 Cir., 37 F.2d 695–701.

■ An appearance is not prevented from being general because it is expressly limited by its terms as special. "The true test is found in what is done by way of participation in the action". United States v. Collins, 2 Cir., 55 F.2d 70–72.

■ Irrespective of whether or not a special appearance is made, a general appearance is effected by participating or taking any part in the trial.

■ To avoid the effect of a general appearance every act must be consistent with and based on the challenge to the jurisdiction of the Court over the person. Muslusky v. Lehigh Valley Coal Co., 225 N.Y. 584, 122 N.E. 461; Henderson v. Henderson, 247 N.Y. 428, 160 N.E. 775.

■ Keegan, in presenting his claim in New York, started proceedings under Sec. 924 of the New York Civil Practice Act, to get the benefits afforded by that section. Under it a claimant of property attached may have his title adjudicated in a proceeding ancillary to the main suit. If successful he gets his property back. If the trial goes against him the sheriff holds the property under his writ. If the claimant makes a fraudulent demand he may be punished for contempt and is liable for damages. Keegan's claim was not only rejected as invalid against the attachment, but was found to have been fraudulently presented. Now, having started the machinery revolving for his own benefit, he wants to stop it at a point least unfavorable to himself. I doubt if he has that option. He submitted himself to the jurisdiction of the Court under the provisions of the section of the New York statute referred to. When he did so it seems to me he submitted himself to the jurisdiction for all proceedings which were applicable under that section. The punishment for contempt was the statutory consequence of filing the claim that he did. To that effect was the ruling of Judge Carew when the matter was considered by him.

■ Again, when the attorney for Keegan appeared before the Court in New York, at the time of the order of July 26, 1939, and argued for dismissal, not only on the ground of defective personal service but on the legal ground that the proceeding had been terminated with a finding as to the title and that there was no further jurisdiction left in the Court to consider the fraudulent nature of the claim, unless a new procedure was begun, it might well be considered that he was going beyond the question of jurisdiction over the person of the defendant and was arguing the question of jurisdiction over the case. "The object of a special appearance is to enable a defendant to raise the question of jurisdiction of the court over the person of the defendant, and it is elementary that an objection to jurisdiction of the cause may not be raised upon a special appearance". McComb v. United States Housing Corp., D.C., 264 F. 589, 590, 592. Dickey v. Turner, 6 Cir., 49 F.2d 998.

When counsel for Keegan appeared before the referee in the second hearing, his objections offered to the admissibility of evidence, his consent to the introduction of evidence and the nature of his argument were inconsistent with his claim that his client was not in court. He was participating in the trial of the case. He was doing something besides objecting to the juris-

diction of the person. I feel that in the activities of the defendant and his counsel in the New York proceeding there is good ground for finding a general appearance, as was also decided by Judge Carew.

The plaintiff, however, contends further that the defendant already has had his day in court on the question of jurisdiction over his person and that it is now res adjudicata. I agree with him on this point also.

The defendant's case, on the question of jurisdiction over the person and the propriety of the contempt proceeding, was presented to Judge Carew, who first re-referred the matter to the referee to clear up the point of the falsity of the claim and, that point being settled, Judge Carew made his findings and conclusions of law which contained his decision on the disputed point of jurisdiction.

The "full faith and credit" clause of the Constitution, although it does not require this Court to recognize judgments in personam of a State Court shown to be without jurisdiction over the person, does require recognition of a decision of such a Court,—being a court of general jurisdiction,—on a question of its own jurisdiction, provided the question was presented to it for decision by the party adversely affected and he was fully heard.

In this case there was no point in the defendant's presenting the question to the Court in New York, and arguing it, if a decision was not sought. If the defendant had made no appearance whatever in New York he could have appeared here and tried out the question of jurisdiction. Having selected his own tribunal for the determination of that question he must be considered to have had his day in court. Baldwin v. Iowa Traveling Men's Ass'n, 283 U. S. 522, 51 S.Ct. 517, 75 L.Ed. 1244; American Surety Co. v. Baldwin, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231, 86 A.L.R. 298.

The defendant contends that the New York decision on the question of jurisdiction is not res adjudicata because the point made by defendant,—that the service on him was insufficient to bring him within the jurisdiction of the Court,—was not passed upon by the Court. It is true, that particular point was not mentioned in the decision. I presume that, on that question alone, the Court would have held that notice by mail to a nonresident does not give jurisdiction to the Court sending it; but the question submitted to the Court was the question of its jurisdiction over the defendant. That question was decided adversely to the defendant, the Court giving reasons for its decision.

The defendant had a full hearing and accepted the decision without taking any question as to his Constitutional rights to the U. S. Supreme Court. I consider that under the circumstances he is bound by the decision, whether right or wrong. Hall v. Wilder Mfg. Co., 316 Mo. 812, 293 S.W. 760, 52 A.L.R. 723–725.

The second attack against the judgment raised in the amended answer is that "the judgment is penal in character and hence cannot be enforced extraterritorially".

I am unable to find merit in this defense. The judgment is for a sum of money directed to be paid the plaintiff by the defendant. The cause of action is merged in the judgment; but there is nothing in the cause of action which prevents the judgment being enforced.

Mr. Bouvier, in his Law Dictionary, Rawles Third Rev., under the heading "Penal Statutes", makes this observation:

"Strictly and properly they are those laws imposing punishment for an offense committed against the State which the Executive has power to pardon, and the expression does not include statutes which give a private action against a wrong-doer."

"A solely penal law will not be enforced in another State, but a statute is not penal, so as not to be enforced by the Courts of another State, merely because it awards penal damages as a measure of the liability of the wrong-doer."

Various cases are cited.

The defendant also makes the point that the Court rendering the judgment "had no jurisdiction to impose a fine of over $250.00."

The objection to the actual jurisdiction of the Court that I find in the answers, or referred to in the pre-trial order, is the objection that the Court rendering the judgment had no jurisdiction over the person of the defendant. No claim was made that the Court lacked jurisdiction over the subject matter, and I think that counsel for defendant, in using the language above

quoted, has in mind "right" or "power", rather than "jurisdiction".

It is not questioned that the Court had authority to take cognizance of and decide this class of cases. It had "jurisdiction" over cases brought before it under any of the Sections of the New York statutes involved here, and, when the parties were in court, had the power to decide incorrectly as well as correctly.

Apparently counsel is misled by the language of the opinion in the case he relies upon (Jos. Riedel Glass Works v. Francis W. Kurtz & Co., 260 App.Div. 163, 20 N. Y.S.2d 938, 941), wherein it is said, in a case involving the same contempt as here, "The court was accordingly without jurisdiction to impose a fine for this misconduct in excess of $250 plus claimant's costs and expenses".

It is clear, however, from the context, that the word "jurisdiction" was used in the sense of "power" or "right". It was held that in a case where there was no proof of actual loss by the aggrieved party in a case of civil contempt, under Section 924, the law did not authorize a fine of more than $250, with some additions. It was not suggested that the Court had no jurisdiction to find more than $250 in case the evidence warranted it.

I have nothing to do with matters of procedure or errors in the Court rendering judgment.

It seems to me that all the learned argument of counsel on the point of the amount of the fine and the point that under the law of New York a fine cannot be docketed as a judgment, even if the defendant is not in jail (as he was in the case relied upon), should have been addressed to the Courts in New York.

▮ I think also that any question of jurisdiction over the subject matter is also res adjudicata. Assuming that the New York Court had personal jurisdiction of the defendant, then, even if he had not raised the question of jurisdiction, and even if

that Court had not decided it, the defendant, having an opportunity to present that question and not doing so, cannot do so here.

The Supreme Court has recently made a pronouncement on that point. In Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 320, 84 L.Ed. 329, Chief Justice Hughes, speaking of a similar case of jurisdiction, says:

"The remaining question is simply whether respondents having failed to raise the question in the proceeding to which they were parties and in which they could have raised it and had it finally determined, were privileged to remain quiet and raise it in a subsequent suit. Such a view is contrary to the well-settled principle that res judicata may be pleaded as a bar, not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, 'but also as respects any other available matter which might have been presented to that end' ".

▮ The defendant claims that the $2,500 already recovered by the plaintiff from the surety on the bond of the sheriff who made the attachment should be set off against any judgment the plaintiff recovers here. I think the defendant is right on that point. The plaintiff suffered one injury and only one. That was on account of the loss of certain of the attached property, due to the wrongful acts of the defendant and others. The fine imposed on Keegan for the benefit of the plaintiff was for making the fictitious claim and under it unlawfully removing or rescuing a part of the attached property. The plaintiff had several remedies against several people, but he only suffered one wrong and can have but one satisfaction. He would have more than one satisfaction if he received $2,500 in addition to the $7,500. Socialistic Co-op. Pub. Ass'n v. Kuhn, 164 N.Y. 473, 58 N.E. 649.

I think the recovery should be for the amount claimed less $2,500 with necessary adjustments of interest, and judgment will be rendered accordingly with costs.